## ATLANTIC COAST LINE R. CO. v. POPE.
### No. 4741.

Circuit Court of Appeals, Fourth Circuit.

April 7, 1941.

Thomas W. Davis, of Wilmington, N. C. (L. J. Poisson and V. E. Phelps, both of Wilmington, N. C., on the brief), for appellant.

Aaron Goldberg and E. K. Bryan, both of Wilmington, N. C., for appellee.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

By this appeal Atlantic Coast Line Railroad Company challenges the jurisdiction of the National Railroad Adjustment Board, Second Division, to make an award, whereby on October 7, 1938, the Railroad Company was required to reinstate one M. C. Pope to his former position of machinist in its shops, and pay him compensation from August 8, 1935, to the date of reinstatement. The contention of the Railroad Company is that jurisdiction of the dispute between it and Pope lay only in a Local or System Board of Adjustment, and that the National Board, therefore, had no power to make the award, and the District Court had no authority to make the award effective by its decree in the pending case.

Pope had been a machinist in the employ of the Railroad Company at Wilmington, North Carolina, for nearly thirteen years, when he was arrested and lodged in jail on July 4, 1935, charged with a serious crime. He was visited at the jail by a railroad police officer, who took away his annual railroad pass, and informed him that upon the order of the master mechanic of the company he would be held out of service until he was cleared of the criminal charge. The same day he was released on bail and, on August 8, 1935, he was tried and acquitted of the crime. He immediately wrote to the general foreman, his superior officer, that he had been vindicated and

asked for reinstatement with back pay for the period of his suspension. Thereafter, he applied in person to the general foreman for permission to go to work, but was informed that he must get permission from the superintendent of motive power, the chief operating officer of the carrier designated to handle such disputes. He sought this permission, but two weeks later, on August 21, 1935, permission was refused on the ground that the master mechanic had not in fact held him out of service pending the outcome of the case, but had reported him out of service for absenting himself without leave. Nothing further occurred until nearly three years later when on April 25, 1938, the Railway Employees Department of the American Federation of Labor filed on behalf of Pope a claim with the National Railroad Adjustment Board, Second Division, and secured the award which he seeks to enforce in this action.

The jurisdictional question requires a consideration of the Railway Labor Act of May 20, 1926, Chapter 347, 44 Stat. 577, as amended by the Act of June 21, 1934, Chapter 691, 48 Stat. 1185, 45 U.S.C.A. § 151 et seq. The Act was passed to secure the prompt and orderly settlement of disputes between carriers and their employees. It provided for the right of employees to organize and bargain collectively, through representatives of their own choosing, and established the National Railroad Adjustment Board, consisting of thirty-six members, eighteen to be selected by the carriers and eighteen by national labor organizations of employees formed under the provisions of the Act. The Board was composed of four divisions, of which the second, consisting of ten members, five selected by the carriers and five by the national labor organizations, was given jurisdiction over disputes involving machinists and other employees. The Act directed that disputes between an employee and a carrier should be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes but failing to reach an adjustment in this manner, the disputes might be referred by petition of either party to the appropriate division of the Adjustment Board, which was empowered to conduct hearings and make an award to be enforced against a carrier, in case of its failure to comply, by the appropriate District Court, upon the petition of the wronged employee.

Section 3 (Second) of the Act as amended, 45 U.S.C.A. § 153, Second, made provision for an alternate mode of review by authorizing the establishment of Local or System Boards of Adjustment upon the following conditions:

"Second. Establishment of system, group or regional boards by voluntary agreement

"Nothing in this section shall be construed to prevent any individual carrier, system, or group of carriers and any class or classes of its or their employees, all acting through their representatives, selected in accordance with the provisions of this chapter, from mutually agreeing to the establishment of system, group, or regional boards of adjustment for the purpose of adjusting and deciding disputes of the character specified in this section. In the event that either party to such a system, group, or regional board of adjustment is dissatisfied with such arrangement, it may upon ninety days' notice to the other party elect to come under the jurisdiction of the Adjustment Board."

On May 20, 1925, prior to the enactment of the National Railway Labor Act, the Railroad Company and the employees of the Mechanical Department represented by an organization known as the Shopmen's Association of Atlantic Coast Line Railroad Company, had set up by agreement a System Board of Adjustment in accordance with the terms of Title III of the Transportation Act of 1920, 41 Stat. 456, 469–474, 45 U.S.C.A. §§ 131–146. On December 5, 1925, the parties to the agreement had formulated certain rules effective January 1, 1926, regarding hours and conditions of labor, and the settlement of disputes, including rules 20, 21 and 22 as follows:

"Rule 20. An employee who believes he has been unjustly dealt with shall endeavor to make an adjustment with his immediate foreman.

"Any further handling in person or through a representative of this Association may be with general foreman, Shop Superintendent or Master Mechanic.

"The right of appeal shall be granted; the appeal to be made, preferably in writing, to the next higher official.

"Rule 21. Should the highest designated railroad official or his duly authorized representative, and the aggrieved employee, or his representative, fail to agree, the

case shall then be handled in accordance with the Transportation Act of 1920.

"Prior to the assertion of grievances as herein provided, and while questions of grievances are pending, there will neither be a shutdown by the employer nor a suspension of work by the employees.

"Rule 22. No employee shall be disciplined without a fair hearing by a designated officer of the Company. Suspension in proper cases pending a hearing, which shall be prompt, shall not be deemed a violation of this rule. At a reasonable time prior to the hearing such employee will be apprised of the precise charge against him. The employee shall have reasonable opportunity to secure the presence of necessary witnesses and shall have the right to be .there represented by counsel of this association."

The parties to the agreement of May 20, 1925, desired to avail themselves of the permission embodied in the Railway Labor Act of May 20, 1926, to continue the local settlement of disputes. Accordingly, they entered into a new agreement on June 24, 1926, in order to take into account the statutory changes. It was agreed (a) to continue the System Board of Adjustment for the same purpose and upon substantially the same basis as when organized in May, 1925; (b) to adopt revised rules governing the jurisdiction and functions of the Board which were incorporated in the agreement; and (c) that an appeal to the System Board of Adjustment must be submitted in writing to the Board within 60 days after the date of the decision below.; otherwise the case should be closed.

Thereafter, on December 1, 1933, other changes in the agreement irrelevant to the present controversy were made, and on November 26, 1934, a further agreement was made for the "establishment of a System Board of Adjustment under the provisions of Section 3 (Second) of the Railway Labor Act, as amended by the Act of June 21, 1934". Under this amendment of the statute, Section 3 (Second) of the Railway Labor Act assumed the form above set out. The agreement of November 26, 1934, was in effect at the time of the circumstances in the pending case. It provided (a) for the continuance of the System Board of Adjustment upon substantially the same basis as when organized June 24, 1926, for the purpose of adjusting and deciding disputes; (b) for the adoption of certain revised rules governing the jurisdiction and functions of the Board; and (c) a time limit on appeals as follows: "c. That a case to be appealed to the System Board of Adjustment (hereinafter referred to as the Board) must be submitted in writing to the Board within 60 days after the date of the decision from which it is appealed; otherwise the case is closed and cannot be handled further. Such submission may be made either jointly or ex parte. It must be accompanied by a full statement of facts and all. supporting data bearing upon the dispute."

Finally, it was agreed that either party might withdraw from the agreement by giving 90 days' notice to the other party. It is stipulated in the pending' case that the System Board of Adjustment created by this agreement was in existence and effect on November 26, 1934, and so continued until, pursuant to Section 3 (Second) of the Act, it was terminated by a letter dated May 13, 1937 from the special representative of the International Association of Machinists to the General Manager of the Railroad Company, wherein was expressed the intention to have any grievances not settled locally referred to the National Adjustment Board for final settlement. By reason of this notice the jurisdiction of the System Board of Adjustment terminated on August 11, 1937. It thus appears that the period of 60 days, allowed to the aggrieved employee for an appeal from the final adverse decision of the carrier on August 21, 1935, expired long before the abolition of the System Board of Adjustment. It also appears that the jurisdiction of that Board had ceased to. exist prior to the consideration of the case by the National Railroad Adjustment Board in October, 1938.

The argument on behalf. of the appellee denies the jurisdiction of the System Board, and at the same time supports the jurisdiction of the National Board. The contention is threefold. It is said (1) that the System Board had no jurisdiction over Pope's case because at the time of his discharge he was not a member of the Shopmen's Association; (2) that although the Railway Labor Act provides for the establishment, by agreement, of a System Board of Adjustment, it does not empower the parties to impose a time limit upon appeals to the Board from an adverse decision of the highest designated officer of the Railroad Company; and hence the decision in Pope's case was still appealable in 1938, when the jurisdiction of the ·National

Board over disputes, "including cases pending and unadjusted on June 21, 1934", came into existence. See Section 3, First (i) of the Act of June 21, 1934, 45 U.S.C.A. § 153, First (i); (3) that the System Board had no jurisdiction over the case because the Railroad Company had failed to comply with Rule 22 of the agreement above set out, in that the Railroad Company had failed to accord Pope a fair hearing before disciplining him, or to apprise him in writing of the precise charge against him, and that until such a hearing, after notice, should be held, the period of 60 days for an appeal to the System Board would not begin to run.

It is clear at the outset that it was not the purpose of Section 3 (Second) of the Railway Labor Act to afford to an aggrieved employee the option to take his case either to the System or the National Board, at his pleasure. The purpose was to continue the local settlement of disputes, in accordance with the established practice, if a carrier and its employees, acting through their representatives, should so elect; but if either party should become dissatisfied, it was empowered upon 90 days' notice "to come under the jurisdiction of the (National) Board". While the agreement lasted, the National Board obviously had no jurisdiction.

It seems equally clear that the System Board of Adjustment had exclusive jurisdiction over all disputes between the Railroad Company and its employees, whether members of the Shopmen's Association or not. The power to agree to a System Board of Adjustment was conferred by Section 3 (Second) of the Act upon the representatives of the employees "selected in accordance with the provisions of this chapter". Other parts of the Act expressly provided for the complete independence of employees in the matter of self-organization, and the right of employees to organize and bargain collectively through representatives of their own choosing, and conferred upon the majority of any class of employees the right to determine who should be the representatives thereof. Section 2 (Fourth) of the Act of May 20, 1926, as amended by the Act of June 21, 1934, 45 U.S.C.A. §§ 151a and 152. Fourth. There can be no doubt that the action of a majority of employees in the selection of representatives and the action of the representatives themselves so selected were intended to be binding upon the whole class of employees. The duty of the minority to recognize the authority of representatives selected by the majority was as binding in this respect as the duty of the carrier to treat with the representatives so selected with respect to pay, rules, working conditions of employees, etc. See Virginian Railway Co. v. Federation No. 40, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789, affirming 4 Cir., 84 F.2d 641; Association of C. E., etc., v. Brotherhood of Ry. and S. S. C., 7 Cir., 85 F.2d 152, 109 A.L.R. 345. In the pending case the Shopmen's association had been duly selected as the representative of the machinists, and its right to represent them had been certified by the National Mediation Board in exercise of the authority conferred by Sections 4, 5, of the Act, 45 U.S.C.A. §§ 154, 155, and in obedience to a decree of the Supreme Court of the District of Columbia issued on January 20, 1936, in litigation between the Shopmen's Association and the National Mediation Board.

Nor, is there merit in the contention that the carrier and its employees, although authorized by the Act to agree to the establishment of a System Board of Adjustment, had no power to limit the time within which the Board's jurisdiction might be invoked by appeal. The contracting parties, throughout the period covered by the statutes under consideration, always assumed the right to make the local tribunals effective by formulating rules of procedure for the settlement of disputes. Rules 20, 21 and 22, above set out, are examples; and the plaintiff himself has invoked Rule 22 as the basis of the argument, to be next considered, that the System Board had no jurisdiction of his case on appeal because he had been discharged without a fair hearing as required by the rule. Subsection (c) of the agreement of November 26, 1934, quoted above, and the substantially similar provision of the agreement of June 24, 1926, were inserted with the evident intent to expedite the settlement of labor disputes and thereby further one of the chief purposes of the legislation. Section 303, Title III of the Transportation Act of 1920, 45 U.S.C.A. § 134, required the Railroad Boards of Adjustment, which it established, to hear such disputes as the parties were unable to decide in conference "as soon as practicable and with due diligence". Among the five purposes set out in Section 2 of the Amendatory Act of June 21, 1934, 45 U.S.C.A. §

151a, under which the agreement of November 26, 1934, was drawn, are the purpose to provide for the prompt and orderly settlement of all disputes concerning rates of pay, rules of working conditions, and the purpose to provide for the prompt and orderly settlement of all disputes growing out of grievances. Section 2 (Second), 45 U.S.C.A. § 152, Second, also provides that all disputes between a carrier and its employees should be considered and, if possible, decided with all expedition in conference between representatives designated by the carrier and employees interested in the dispute. It cannot be said that the limitation period of 60 days was unreasonable, paralleling as it did similar provisions in divers federal and state statutes regulating the procedure of courts of appeals.

■ Seeing, then, that the limitation on appeals was a reasonable provision in harmony with the mutual interests of the contracting parties and with the major purposes of Congress, we have no doubt as to its validity. It is not unusual in certain types of contracts to find an article limiting the time within which suits growing out of the performance of the contract must be commenced, for example, contracts of shipment and contracts of insurance; and, it is well settled that such a provision, if reasonable in extent, is within the power of the parties and is binding upon them, even if the stipulated period is shorter than set up in the statutes of limitation otherwise applicable. Missouri, Kans. & Tex. Ry. Co. v. Harriman, 227 U.S. 657, 671, 33 S.Ct. 397, 57 L.Ed. 690; Schnell v. United States, 2 Cir., 30 F.2d 676; The Susquehanna, 4 Cir., 296 F. 461. The terms of the agreement setting up the System Board of Adjustment in the pending case were equally binding upon the parties. The Board was established as an appellate tribunal by virtue of the power conferred by the Act of Congress, and the limitation upon the period of appeals was merely an appropriate step taken in the exercise of the power to promote efficient administration.

■ We are convinced, also, that the period of limitation for the appeal began to run on August 21, 1935, when, in accordance with Section 2 (Sixth), and Section 3, First (i) of the statute, 45 U.S.C.A. §§ 152, Sixth, 153, First (i), the chief operating officer of the carrier, designated to handle such disputes, rendered his adverse decision; and that 60 days thereafter, no appeal having been taken, the case was finally closed. The appellee contends that this cannot be so because he was discharged without a fair trial as required by Rule 22 and that no appeal could be taken to the System Board until such a trial had been held and a decision had been rendered; and hence the case was still open when considered by the National Board in 1938. Such an interpretation of the rules of procedure incorporated in the agreement cannot in our opinion be fairly made. It would tend to destroy the very protection to wronged employees that the whole system was designed to afford. Unquestionably the reasonable requirement of a fair trial after due notice before disciplinary action should be taken, was in harmony with the fundamental conceptions of due process; and it would have been the duty of the System Board to reverse any disciplinary action taken without compliance with the rule, irrespective of the merits of the complaint. But, certainly, there was no intention to deprive the appellate body of its corrective power, if the carrier should fail to follow the proper procedure. Such a conclusion would defeat the purposes of the Act by putting it within the power of the Railroad Company to prolong a dispute indefinitely and to deny to the aggrieved party access to the tribunal especially set up for his relief.

At the end of 60 days after the adverse decision of the designated railroad official, the case became closed and could not be handled further under the express terms of the agreement. Obviously the controversy was no longer open almost three years later when, for the first time the aggrieved employee took action to upset the decision against him. The case was therefore not pending in 1937 when the System Board was abolished, and the general jurisdiction of the National Board attached. Nothing remained for it to adjudicate.

The Railroad makes the contention that the award of the National Board was invalid for the additional reason that the members of the Board, being unable to agree, called in a referee as a member of the Board to break the deadlock under the provisions of Section 3(l) of the Act, and thereafter the award was made, without notice to the parties and without further hearing, upon the presentation to the referee by the other members of the Board of such summaries of the evidence as they deemed sufficient. But, in view of the conclusions stated above, it is unnecessary to

decide whether the Board's course of action in this respect was in accordance with essential procedural requirements.

The judgment of the District Court will therefore be reversed.