O. H. Matthews and Paul G. Ellis, both of Salt Lake City, Utah, for appellant.

W. Hal Farr, of Salt Lake City, Utah (Geo. H. Smith and Robt. B. Porter, both of Salt Lake City, Utah, on the brief), for appellee.

Before PHILLIPS, MURRAH, and WILLIAMS, Circuit Judges.

## BURKE v. UNION PAC. R. CO.
### No. 2495.

Circuit Court of Appeals, Tenth Circuit.

June 30, 1942.

WILLIAMS, Circuit Judge.

Appellant, herein referred to as plaintiff, alleged that under rules and regulations between the Brotherhood of Railway Trainmen, a labor organization, and defendant, an interstate carrier, he was entitled to work, at his agreed wage of $7.06 per day as a yard switchman; that he had been paid such wage for such work-time performed by him; that he went to work on July 19, 1937, and on September 9, 1937,

was laid off on account of reduction of force; that on September 26, 1937, was notified of his recall for active service but he was then working for another railroad company; that he gave company ten days' notice as required by the rules and regulations and reported back to defendant for work on October 6, 1937, within thirty days allowed by the rules but defendant refused to put him back to work on the asserted ground that he had not reported soon enough after notice of recall; that he took work elsewhere whenever work was available but complained to defendant's officials and asked for reinstatement under his seniority right under the said rules and regulations in force and on September 25, 1939, defendant's division superintendent took favorable action upon his complaint and he was put back to work and reinstated in his seniority right to work as of July 19, 1937; that after said restoration to work he continued as yard switchman until October 30, 1939, when he was again laid off by a crew despatcher and temporarily given other work and was then notified that his seniority date was changed to October 6, 1937, and a junior yardman was given work in his place; that on March 30, 1940, another crew despatcher again changed his seniority date from October 6, 1937 to October 19, 1939, and at the same time removed his name from the Extra Board and informed him he was ineligible to recall as yard switchman; that such action was contrary to the rules and regulations and that he objected and complained until defendant's general yard manager reinstated him and fixed his seniority date as of October 6, 1937, and put him back to work; that from September 9, 1937, when plaintiff was laid off on the reduction of force until the beginning of this action he has been continuously discriminated against by defendant in favor of other men with junior seniority dates who were members of the Brotherhood of Railway Trainmen; that he was not a member of said Brotherhood but under the said rules, regulations and agreement was entitled to the same rights as to seniority and to work as members of the said Brotherhood, and that he has been and is greatly damaged and injured in respect to his right to work and his means of livelihood, the precise amount of his loss being unknown to plaintiff but being well-known to defendant by reason of its books, records, and accounts, and is in excess of $3,000.00, to-wit: $10,000.00;

that he has exhausted all of his remedies by negotiation with defendant and its higher officials empowered to act, with the Mediation Board at Washington, D. C., and the First Division of the Adjustment Board at Chicago under the provisions of the Federal Railway Labor Act, 45 U.S.C.A. § 151 et seq. without effect; that he petitioned and complained to the said National Mediation Board concerning the said matters complained of and was advised by letter from the Secretary of said Board dated July 3, 1940, that the said Board declined to take action thereon on the ground that plaintiff's complaint was not one coming within the jurisdiction of the said Board; and that when he complained to the First Division of the National Adjustment Board at Chicago, Ill., having jurisdiction of plaintiff's said grievances, complaining of said several matters and wrongful acts of the defendant, the said Division of said Adjustment Board caused its secretary to advise plaintiff's attorney by letter as follows:

"Sept. 4, 1940. Referring to your notice of July 30, 1940, of intention to file an ex parte submission on the 1st day of Sept. 1940, involving the seniority status of James M. Burke as switchman in the employ of the Oregon Short Line Railroad (which was a part of the defendant line), this petition was given consideration by the Division but a motion to accept it and to request the carrier to file its submission failed to receive the affirmative vote to permit this to be done."

Plaintiff further alleged that for that reason further proceedings could not be had or taken under said Railway Labor Act and that he had exhausted all his means for securing aid from the carrier by negotiations under said Act as amended. He sought relief as follows:

"Wherefore, plaintiff demands judgment or decree of the court that defendant account to the plaintiff for and concerning the matters and things hereinbefore alleged; that it produce its books, records, payrolls, disbursement checks, and accounts; its roster of seniority rights of its yardmen employees showing their order and dates of priorities; its rules and schedules governing the seniority rights of its yard employees at Salt Lake City or elsewhere if asserted to be prior in time and right to employment to that of the plaintiff, and a full showing as to the names,

dates of employment and terms of service and payment of yardmen employees having seniority dates subsequent to July 19, 1937.

"Plaintiff demands a determination of the amount of wages rightly accruing to plaintiff for services had he been furnished employment to which his seniority rights entitled him but which employment was wrongfully given and wages paid to other men with junior seniority dates to plaintiff's. And for judgment for the amount so to be found due plaintiff.

"For a judgment or decree establishing plaintiff's true seniority date as of July 19, 1937, or if later, then according to the true date.

"For an injunction restraining the defendant from again changing or interfering with plaintiff's said seniority rights to employment as so established and found by the Court.

"For general relief as to the court may seem equitable in the premises, and for costs of this action."

The employment complained of herein was on a line of railroad running into Salt Lake City, Utah from a point in Oregon, which had been for many years operated by the Oregon Short Line Railroad Company, the defendant having in 1938 succeeded to its possession and operation, at same time taking into its service the yard switchmen and other operators and continued in effect the existing rules governing working conditions including seniority rights as from time to time amended.

Diversity of citizenship is neither alleged nor jurisdiction thereby claimed, it being insisted that jurisdiction exists in that the controversy "arises under a law of the United States," no provision of the Constitution of the United States or any treaty being involved.

■ For jurisdiction to so arise, a suit must substantially involve the validity, construction or effect of such a law as an essential element of the cause of action.

In Viles v. Symes et al., 10 Cir., 129 F. 2d 828, it is said:

"The question of when a suit arises under the Constitution and laws of the United States, cognizable in its courts, absent diversity of citizenship, has a well defined meaning in our jurisprudence. To confer jurisdiction on the Federal court under this statute (Section 24 (1) Judicial Code [28 U.S.C.A. § 41 (1)]), a right or immunity created by the Constitution, or the laws of the United States, must be an element, and an essential one, of the plaintiff's cause of action. And the right or immunity asserted must be such that it will be supported if the Constitution and laws of the United States are given one construction and effect, and defeated if they receive another. Starin v. [City of] New York, 115 U.S. 248, 6 S.Ct. 28, 29 L. Ed. 388; First National Bank v. Williams, 252 U.S. 504, 40 S.Ct. 372, 64 L.Ed. 690; Smith v. Kansas City Title Company, 255 U.S. 180, 199, 41 S.Ct. 243, 65 L.Ed. 577; Gully v. First National Bank, 299 U.S. 109, 112, 57 S.Ct. 96, 81 L.Ed. 70; Gardner v. Schaffer, 8 Cir., 120 F.2d 840. It is said, 'a suit to enforce a right which takes its origin in the laws of the United States is not necessarily, or for that reason alone, one arising under those laws, for a suit does not so arise unless it really and substantially involves a dispute or controversy respecting the validity, construction, or effect of such a law, upon the determination of which the result depends.' Shulthis v. McDougal, 225 U.S. 561, 569, 32 S.Ct. 704, 706, 56 L.Ed. 1205; Gully v. First National Bank, supra [299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70]."

See, also, The Fair v. Kohler Die & Specialty Co., 228 U.S. 22, 33 S.Ct. 410, 57 L.Ed. 716; and Lund v. Woodenware Workers Union, D.C.D.Minn., 19 F.Supp. 607; Thomson v. Gaskill, 62 S.Ct. 673, 86 L.Ed. ——; Malone v. Gardner, 4 Cir., 62 F.2d 15; Parrish v. Chesapeake & O. Ry. Co., 4 Cir., 62 F.2d 20, certiorari denied 288 U.S. 604, 53 S.Ct. 397, 77 L.Ed. 979.

Subdivision (i) of Section 153 of the Act, 45 U.S.C.A. provides:

"The disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions, including cases pending and unadjusted on June 21, 1934, shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board with a full statement of the facts and all supporting data bearing upon the disputes."

In Moore v. Illinois Central Railroad Co., 312 U.S. 630, 61 S.Ct. 754, 756, 85 L.

Ed. 1089 (5 Cir., 112 F.2d 959), a member of the Brotherhood of Railroad Trainmen, brought suit for damages against respondent railroad company, alleging and claiming that he had been wrongfully discharged contrary to the terms of a contract between the Trainmen and the railroad, diversity of citizenship existing, and the Supreme Court of the United States, on review by certiorari, said:

"In support of its contention, the railroad points especially to section 153 (i), which, as amended in 1934, provides that disputes growing out of grievances or out of the interpretation or application of agreements 'shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board with a full statement of the facts and all supporting data bearing upon the disputes.' And in connection with this statutory language the railroad also directs our attention to a provision in the agreement between the Trainmen and the railroad—a provision authorizing Moore to submit his complaint to officials of the railroad, offer witnesses before them, appeal to higher officers of the company in case the decision should be unsatisfactory, and obtain reinstatement and pay for time lost if officials of the railroad should find that his suspension or dismissal was unjust. It is to be noted that the section pointed out, § 153 (i), as amended in 1934, provides no more than that disputes 'may be referred * * * to the * * * Adjustment Board * * *.' It is significant that the comparable section of the 1926 Railway Labor Act (44 Stat. 577, 578), had, before the 1934 amendment, provided that upon failure of the parties to reach an adjustment a 'dispute shall be referred to the designated adjustment board by the parties, or by either party * * *.' Section 3 (c). This difference in language, substituting 'may' for 'shall', was not, we think, an indication of a change in policy, but was instead a clarification of the law's original purpose. For neither the original 1926 Act, nor the Act as amended in 1934, indicates that the machinery provided for settling disputes was based on a philosophy of legal compulsion. On the contrary, the legislative history of the Railway Labor Act shows a consistent purpose on the part of Congress to establish and maintain a system for peaceful adjustment and mediation voluntary in its nature. The District Court and the Circuit Court of Appeals properly decided that petitioner was not required by the Railway Labor Act to seek adjustment of his controversy with the railroad as a prerequisite to suit for wrongful discharge."

No federal statute other than the Railway Labor Act is here in the instant case alleged to be involved, and only to the extent that plaintiff in part followed certain of its provided procedure, and that he had exhausted his remedies thereunder. He claims under the terms of a collective agreement for simple breach of contract, with no diversity of citizenship nor any alleged violation of any right guaranteed under the federal constitution, for damages either expressly or inferentially arising, in excess of interest and costs, in sum of more than $3,000.00.

The Railway Labor Act enjoins upon the carriers and their employees to make and maintain agreements concerning rates of pay, rules, and working conditions and to settle disputes arising thereunder, silent, insofar as authority is concerned, for any person to enter the federal courts, save and except the person for whose benefit an order for an award has been made, and courts that have passed upon said Act have held that an action under its provisions can be entertained only when there has been an award to the plaintiff by the National Railroad Adjustment Board and the employer has failed or refused to comply with same. Section 153 (p), 45 U.S.C.A.; Malone v. Gardner, supra; Parrish v. Chesapeake & O. Ry. Co., supra; Lane v. Union Terminal Co., et al., D.C.N.D.Tex., 12 F.Supp. 204; Stephenson v. New Orleans & N. E. R. Co., 180 Miss. 147, 177 So. 509, 519; Smith et al. v. Texas & N. O. R. Co., D.C.W.D.La., 32 F.Supp. 1013; Howard v. United States., ex rel. Alexander, 10 Cir., 126 F. 2d 667; Long v. Van Osdale, Ind.App., 26 N.E.2d 69; Cousins v. Pullman co., Tex. Civ.App., 72 S.W.2d 356; Atlantic Coast Line Railway Co. v. Pope, 4 Cir., 119 F.2d 39; Harrison v. Pullman Co., 8 Cir., 68 F.2d 826; Wyatt v. Kansas City Southern Ry. Co. et al., Tex.Civ.App., 101 S.W.2d 1082; Glass v. Hoblitzelle, Tex.Civ.App., 83 S.W.2d 796; Reed v. St. Louis S. W. Ry. Co., Mo.App., 95 S.W.2d 887; Austin v. Southern Pac. Co., Cal.App., 123 P.2d

39; Brotherhood of Railroad Shop Crafts, etc., v. Lowden, 10 Cir., 86 F.2d 458, 108 A.L.R. 1128; McDermott v. New York C. R. Co., D.C.S.D.N.Y., 32 F.Supp. 873.

The judgment of the United States district court in dismissing the action for lack of jurisdiction is affirmed.