## STARKE v. NEW YORK, CHICAGO & ST. LOUIS R. CO.

### No. 10023.

United States Court of Appeals
Seventh Circuit.

Feb. 28, 1950.

Irving Meyers, Ben Meyers, David B. Rothstein, Edmund Hatfield, Chicago, Ill., Meyers, Meyers & Rothstein, Chicago, Ill., attorneys for plaintiff-appellant.

George B. Christensen, Neal J. McAuliffe, John L. Behr, Chicago, Ill., Winston,

Strawn, Shaw & Black, Chicago, Ill., attorneys for defendant-appellee.

Before MAJOR, Chief Judge, and KERNER and LINDLEY, Circuit Judges.

MAJOR, Chief Judge.

This is an appeal from an order entered June 23, 1949, on defendant's motion, dismissing plaintiff's suit for lack of jurisdiction.

■ Much of plaintiff's argument before this court is predicated upon asserted facts purportedly taken from the briefs of the parties in the lower court but not alleged in the complaint and from an unpublished opinion of that court, none of which appears in the record before us. Manifestly, such extraneous matter cannot properly be considered in determining the validity of the order appealed from.

The complaint alleges that the plaintiff has since December 2, 1922 been employed by the defendant as a machinist and that "Under successive collective bargaining agreements entered into between the defendant and the successive duly authorized collective bargaining agents of the plaintiff" (naming such authorized agents, the last of which was System Federation No. 57, Railway Employees Department of the American Federation of Labor Mechanical Section thereof), and that "plaintiff by said employment by defendant acquired seniority rights accruing as December 2, 1922." It is alleged "That despite said collective bargaining contracts and in violation thereof, and in violation of the Railway Labor Act (Act of August 13, 1940; 45 U.S.C.A., Sect. 151 et seq.), which provides that it shall be the duty of carriers and their employees to make and maintain such collective bargaining agreements concerning rates of pay, rules and working conditions and to settle disputes arising thereunder, defendant improperly placed plaintiff in a seniority position below that of two other machinists whose accumulated seniority was less than that of plaintiff." It is alleged "That there are no further administrative remedies plaintiff must exhaust before bringing this action."

The complaint prays for "a judgment declaratory of plaintiff's seniority rights as an employee of defendant under the collective bargaining agreements entered into * * * pursuant to the provisions of the Railway Labor Act, said judgment of this Court to be declaratory of plaintiff's correct position on defendant's Machinists' Seniority Roster," and for restoration of such rights and to secure compensation for the damage resulting to plaintiff from defendant's long-standing impairment of plaintiff's seniority rights, which has wrongfully been paid to other employees with seniority rights junior to that of the plaintiff. And the complaint prays for a permanent injunction restraining the defendant from again changing or interfering with the said seniority rights.

Plaintiff contends that the court acquired jurisdiction because of diversity of citizenship of the parties, but even in the absence of such diversity the cause of action was one arising under the Railway Labor Act.

The sole allegation as to diversity is, "Plaintiff is a citizen of the State of Illinois. Defendant is a corporation, incorporated under the laws of the States of New York, Pennsylvania, Ohio, Indiana and Illinois." Then follows an allegation that the matter in controversy exceeds the sum of $3,000. Obviously the allegation as to diversity is insufficient on its face. Plaintiff, however, cites an authority, not shown in the record, which purports to disclose the official history of the defendant and construes the same to show that the defendant is a New York corporation and through a process of mergers was authorized to do business in Illinois. Upon this premise a number of cases are cited, the leading one of which is St. Louis and San Francisco Railway Co. v. James, 161 U.S. 545, 16 S.Ct. 621, 40 L.Ed. 802, in which it was held that there is an indisputable presumption that a corporation is composed of citizens of the State which created it, and that such presumption accompanies it when it does business in another State so that it may sue and be sued in the Federal courts in such other States

as a citizen of the State of its original creation.

■ Without attempting to dissect defendant's complicated history, we are of the view that such history shows a voluntary consolidation by defendant and certain other railroads and that defendant has acquired a citizenship in each of the States of its incorporation. There are many cases in which, under such circumstances, the James case, supra, has been distinguished. Such distinction is aptly stated in Case v. Atlanta & C. A. L. R. Co., et al., D.C., 225 F. 862, 866:

"That line of decisions has no application to this cause. The line of decisions with which we are concerned grows out of the consolidation of railroad companies incorporated in different states. * * * All the decisions and text-writers agree that, where one corporation is formed by the consolidation of two or more corporations, the consolidated corporation is a citizen of each state in which any one of the constituent companies was a citizen. Upon this point there is marked unanimity."

See also Town of Bethel v. Atlantic Coast Line R. Co., 4 Cir., 81 F.2d 60, certiorari denied, Atlantic Coast Line R. Co. v. Town of Bethel, 298 U.S. 682, 56 S.Ct. 952, 80 L.Ed. 1402.

Plaintiff, contending that he has stated a cause of action arising under the laws of the United States, relies upon Sec. 152, First, of the Railway Labor Act, which provides:

"It shall be the duty of all carriers, their officers, agents and employees to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules and working conditions, and to settle all disputes, whether arising out of the application of such agreements or otherwise, in order to avoid any interruption to commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof."

It is argued that the defendant has in two respects failed to perform duties imposed upon it by this section: (1) to maintain agreements concerning rules and working conditions, and (2) to settle disputes with employees, whether arising out of the application of such agreements or otherwise.

■ Any plausibility in plaintiff's contention arising from a literal reading of the section relied upon has been, in our judgment, entirely dissipated by a long line of court decisions construing the history, the purpose and the rights created by the Railway Labor Act. It is plain that the wrong of which plaintiff complains, that is, the impairment of his seniority rights, stems entirely from an agreement entered into in conformity with the requirements of the Act between plaintiff's bargaining agent and the defendant. Plaintiff has no statutory or constitutional right to seniority. Such right exists solely by reason of the contract. Hence his right is not one which "involves a dispute or controversy respecting the validity, construction, or effect of such a law, upon the determination of which the result depends." Shulthis v. McDougal, 225 U.S. 561, 569, 32 S.Ct. 704, 706, 56 L.Ed. 1205. See also Gully v. First National Bank, 299 U.S. 109, 112, 57 S.Ct. 96, 81 L.Ed. 70.

Plaintiff's untenable position is illustrated by the cases upon which he relies. Tunstall v. Brotherhood of Locomotive Firemen and Enginemen, et al., 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187; Graham et al. v. Brotherhood of Locomotive Firemen and Enginemen, 338 U.S. 232, 70 S.Ct. 14. In those cases, as will be noted, the suits were against both the carrier and the Brotherhood as the bargaining agent for the employees and, in short, rested upon the premise that the agreements made were discriminatory and in violation of the plaintiff's statutory and constitutional rights. As the court in the Tunstall case stated, 323 U.S. at page 213, 65 S.Ct. at page 237: "It is the federal statute which condemns as unlawful the Brotherhood's conduct." In contrast, there is no contention here that the agreement relied upon is condemned by the statute, but on the other hand it concededly is in conformity therewith.

Another case stressed by the plaintiff is Moore v. Illinois Central Railroad Co.,

312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089. True, in that case the court sustained the right of an employee to sue a railroad company for wrongful discharge and, referring to the Railway Labor Act, stated, 312 U.S. at page 634, 61 S.Ct. at page 756: "But we find nothing in that Act which purports to take away from the courts the jurisdiction to determine a controversy over a wrongful discharge or to make an administrative finding a prerequisite to filing a suit in court." There, the suit was commenced in a State court and removed to the Federal court upon the ground of diversity. We suppose that what the court meant was that the jurisdiction which a court otherwise had was not removed by the Act. If so, the case is distinguishable from the instant situation where it is claimed that jurisdiction is conferred by the Act. But if this be not a valid distinction it appears certain that Moore has been overruled by subsequent decisions of the Supreme Court. See particularly Elgin, Joliet & Eastern Railway Co. v. Burley et al., 325 U.S. 711, 725, 65 S.Ct. 1282, 89 L.Ed. 1886.

That plaintiff's contention is untenable is shown directly by the decisions of a number of inferior courts and also by unmistakable implication, if not directly, by a number of Supreme Court decisions. In the former category are Burke v. Union Pac. R. Co., 10 Cir., 129 F.2d 844; Barnhart et al. v. Western Maryland R. Co., 4 Cir., 128 F.2d 709, certiorari denied 317 U.S. 671, 63 S.Ct. 75, 87 L.Ed. 538; Shipley et al. v. Pittsburgh & L. E. R. Co., 70 F.Supp. 870, and Strawser v. Reading Co., D.C., 80 F.Supp. 455. In the latter category are three decisions, all decided November 22, 1943, Switchmen's Union of North America et al. v. National Mediation Board et al., 320 U.S. 297, 64 S.Ct. 95, 88 L.Ed. 61; General Committee, etc. v. Missouri-Kansas-Texas Railroad Co. et al., 320 U.S. 323, 64 S.Ct. 146, 88 L.Ed. 76, D.C., and General Committee, etc. v. Southern Pacific Co. et al., 320 U.S. 338, 64 S.Ct. 142, 88 L.Ed. 85, as well as Elgin, Joliet & Eastern Railway Co. v. Burley et al., supra, and Order of Railway Conductors of America et al. v. Pitney et al., 326 U.S. 561, 66 S.Ct. 322, 90 L.Ed. 318.

In the Burke case, supra [129 F.2d 847], the court characterized plaintiff's claim as one for "simple breach of contract" under the terms of a collective bargaining agreement and affirmed the trial court's judgment dismissing the action for lack of jurisdiction. The court reasoned that Sec. 152, First, of the Act being silent as to the right of an employee to proceed in the Federal court, no such right existed. In the Barnhart case, supra, the court for the same reason affirmed an order of dismissal for lack of jurisdiction in a situation almost parallel to the one before us, and stated, 128 F.2d at page 714:

"These alleged rights, then, so incorporated in the agreement, thus became a matter of contract between the parties, and any rights of the appellants, in this connection, arose, not out of the statute that set up the Board, not out of the action of the Board in promulgating the rules, but out of the contract itself. If these observations be true, it is clear that the instant case did not arise under any statute of the United States so as to confer jurisdiction, on this basis, upon the United States District Court."

In the three Supreme Court cases, supra, decided November 22, 1943, the court in each case held that the Federal court was without jurisdiction to entertain the suits under consideration. It is true that in none of those cases did the court have before it the precise question presented here, but the court did at length consider the legislative history as well as the purpose of the Act and pointed out that there are only two situations provided for in the Act where the court is authorized to review the findings or activities of the administrative agency created and provided for by the Act and it reasoned that Congress having specifically conferred jurisdiction in these instances it must be inferred that jurisdiction was otherwise withheld.

In the Switchmen's case the court stated, 320 U.S. at page 303, 64 S.Ct. at page 98:

"And where no judicial review was provided by Congress this Court has often refused to furnish one even where questions of law might be involved."

In both the Switchmen's case, 320 U.S. at page 305, 64 S.Ct. 95, and the Missouri-Kansas-Texas Railroad Co. case, 320 U.S. at page 331, 64 S.Ct. 146, the court specifically pointed out that Congress established the National Railroad Adjustment Board for the settlement of specific types of disputes or grievances between employees and the carrier and that the jurisdiction of courts was limited to suits based on the awards of the Adjustment Board. In the latter case, in referring to the history of the Act, the court stated, 320 U.S. at page 333, 64 S.Ct. at page 151:

"That history has a special claim here. It must be kept in mind in analyzing a bill of complaint which, like the present one, seeks to state a cause of action under the Railway Labor Act and asks that judicial power be exerted in enforcement of an obligation which it is claimed Congress has created."

And again the court stated, 320 U.S. at page 337, 64 S.Ct. at page 152:

"In view of the pattern of this legislation and its history the command of the Act should be explicit and the purpose to afford a judicial remedy plain before an obligation enforcible in the courts should be implied. Unless that test is met the assumption must be that Congress fashioned a remedy available only in other tribunals."

Further, the court stated, 320 U.S. at page 337, 64 S.Ct. at page 153:

"We are here concerned solely with legal rights under this federal Act which are enforcible by courts. For unless such a right is found it is apparent that this is not a suit or proceeding 'arising under any law regulating commerce' over which the District Court had original jurisdiction by reason of § 24(8) of the Judicial Code, 28 U.S.C. § 41(8)".[1]

In the Pitney case, supra, there was involved a dispute growing out of agreements concerning rates of pay, rules or working conditions. The court, in discussing the function of the Adjustment Board, stated, 326 U.S. at page 566, 66 S. Ct. at page 324:

"Not only has Congress thus designated an agency peculiarly competent to handle the basic question here involved, but as we have indicated in several recent cases in which we had occasion to discuss the history and purpose of the Railway Labor Act, it also intended to leave a minimum responsibility to the courts."

And the court further stated, 326 U.S. at page 567, 66 S.Ct. at page 325:

"Only after the Adjustment Board acts, but not until then, can it plainly appear that such relief is necessary to insure compliance with the statute."

An extraneous matter not shown by the complaint upon which plaintiff places much reliance is his statement that his grievance over the course of the years had been frequently brought to the attention of the officers of his bargaining representative and because of their refusal to act in his behalf he was cut off from access to the Railroad Adjustment Board. This assertion, however, if it had been alleged would not have strengthened plaintiff's cause for the reason that his remedy was not dependent upon action by the agency which represented the employees but he was entitled either personally or by attorney to present his grievance to the Adjustment Board where all the parties interested in the dispute are entitled to notice, hearing and to participate. See Elgin, Joliet & Eastern Railway Co., supra, 325 U.S. at pages 727 and 732, 65 S.Ct. 1282.

Congress having specifically conferred upon the Adjustment Board the authority to hear and determine plaintiff's grievance, it is not in the absence of express language to be implied that it also intended to confer jurisdiction upon the courts. Such a holding, as a reading of the above cases abundantly discloses, would seriously im-

1. Now 28 U.S.C.A. § 1337.

pair if not destroy the usefulness of the Act and the purpose which Congress sought to achieve. .

The order appealed from is

Affirmed.