J. R. ALABAUGH, W. H. Schaver, J. W. Welman, E. J. Schwenninger, C. H. Smith, and C. B. Fledderman, Appellants,

v.

The BALTIMORE AND OHIO RAILROAD COMPANY, a body corporate, and Brotherhood of Locomotive Engineers, an unincorporated association, et al., Appellees.

No. 6955.

United States Court of Appeals Fourth Circuit.

Argued April 15, 1955.

Decided May 20, 1955.

≥416

Duke Avnet, Baltimore, Md. (Avnet & Avnet, Baltimore, Md., and Harold Naughton, Cumberland, Md., on brief), for appellants.

S. R. Prince (E. H. Burgess, Baltimore, Md., on brief), for appellee The Baltimore and Ohio Railroad Company.

Harold N. McLaughlin, Cleveland, Ohio, and Bernard M. Savage, Baltimore, Md. (Donald W. Hornbeck and Richard C. Ogline, Cleveland, Ohio, on brief), for appellee General Committee of Adjustment of Brotherhood of Locomotive Engineers on Baltimore and Ohio Railroad.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

PARKER, Chief Judge.

This is an appeal from an order dismissing a suit for lack of jurisdiction. See Alabaugh v. Baltimore & O. R. Co., D.C., 125 F.Supp. 401. Plaintiffs are six locomotive engineers employed by the Baltimore & Ohio Railroad Company. The defendants are that company and the General Grievance Committee of the Brotherhood of Locomotive Engineers. The Brotherhood had entered into a union shop agreement with the B. & O. and had complained to the B. & O. that plaintiffs had failed to maintain union membership in accordance with the agreement. The B. & O. had notified plaintiffs that they would be dropped from service in accordance with its terms and they instituted this suit to enjoin their discharge. The court below dismissed the suit for lack of jurisdiction, because plaintiffs had not exhausted their administrative remedies before the National Railroad Adjustment Board and they have appealed from that order.

The controversy here arises out of a union shop agreement entered into between the B. & O. and the Brotherhood pursuant to the 1951 amendment of the Railway Labor Act. 45 U.S.C.A. § 152, Eleventh. That statute authorized union shop agreements requiring union membership of all employees. The authorization was that the agreement might require employees to become members of the labor organization representing their craft or class within sixty days of the making of the contract or of their employment whichever was later, with provision that no agreement should require membership of employees who were not admitted to membership on equal terms with other members or to whom membership was denied or terminated for any reason other than nonpayment of dues. A further provision was that the requirement as to membership would be satisfied by membership in any organization "national in scope" organized in accordance with the Railway Labor Act and admitting to membership employees of a craft or class in any of the railway services. As to employees not members of any labor organization at the time of the making of the agreement, they might be required to become members of the organization representing employees, with

a proviso that nothing in that section of the statute or in the agreement should prevent an employee changing membership from one organization to another. The pertinent portions of the statute are set forth in the margin.[1]

The agreement between the B. & O. and the Brotherhood provides that, as a condition of their continued employment, employees shall become members of the Brotherhood and thereafter maintain membership therein, subject to conditions similar to those set forth in the statute. It provides machinery for enforcing its provisions, requiring the Brotherhood to initiate proceedings for failure to comply and providing that any employee charged with such failure may request a hearing from the carrier, that the carrier shall make a determination of the facts after a hearing and that appeal may be taken to the highest officer of the carrier whose determination shall be final, except in case of a dispute between the carrier and the Brotherhood, as to which provision is made for reference to arbitrators whose action shall be final.

Plaintiffs were members of the Brotherhood in good standing at the time of the agreement and remained such until August 31, 1952, when they joined the United Railroad Operating Crafts, hereafter called UROC, a rival union, thinking, so they allege, that it was a union "national in scope" within the meaning of the Act, although it was later found not to occupy that status. One of them later joined the Brotherhood of Locomotive Firemen and Enginemen, a union admittedly national in scope. In October 1952 they were cited for failure to comply with the union shop agreement. Hearings were held on the charge in November of that year and in August 1954 a decision was rendered that they be dropped from their positions. Appeals from this decision were duly taken, but without success, and decision was rendered by the proper official of the B. & O. that they be dropped from service on October 8, 1954. They allege that on September 1 they made application for reinstatement to membership in the Brotherhood but that their application was re-

1. 45 U.S.C.A. § 152, Eleventh authorizes carriers and labor organizations duly designated to represent their employees "(a) to make agreements, requiring, as a condition of continued employment, that within sixty days following the beginning of such employment, or the effective date of such agreements, whichever is the later, all employees shall become members of the labor organization representing their craft or class: Provided, That no such agreement shall require such condition of employment with respect to employees to whom membership is not available upon the same terms and conditions as are generally applicable to any other member or with respect to employees to whom membership was denied or terminated for any reason other than the failure of the employee to tender the periodic dues, initiation fees, and assessments (not including fines and penalties) uniformly required as a condition of acquiring or retaining membership.

"(b) to make agreements providing for * * * (a check off).

"(c) The requirement of membership in a labor organization in an agreement made pursuant to subparagraph (a) of this paragraph shall be satisfied, as to both a present or future employee in engine, train, yard, or hostling service * * * if said employee shall hold or acquire membership in any one of the labor organizations, national in scope, organized in accordance with this chapter and admitting to membership employees of a craft or class in any of said services; * * *.

"Provided, however, That as to an employee in any of said services on a particular carrier at the effective date of any such agreement on a carrier, who is not a member of any one of the labor organizations, national in scope, organized in accordance with this chapter and admitting to membership employees of a craft or class in any of said services, such employee, as a condition of continuing his employment, may be required to become a member of the organization representing the craft in which he is employed on the effective date of the first agreement applicable to him: Provided, further, That nothing herein or in any such agreement or agreements shall prevent an employee from changing membership from one organization to another organization admitting to membership employees of a craft or class in any of said services. * * * *"

jected because they had previously joined the UROC and that this was discriminatory action on the part of the Brotherhood, which had a policy of reinstating members who were in arrears in the payment of dues. They instituted this action to enjoin their discharge, contending that their rights under the statute were being violated in that they had been discriminatorily denied reinstatement by the Brotherhood, that their cases had not been promptly handled as the statute requires, that they could not be discharged for failing to maintain membership in the Brotherhood but only for failing to acquire it and that the acquisition of membership in UROC was sufficient under the act, on the theory that, although UROC was not a union national in scope, this status was not required with respect to a change of membership.

█ We think that the suit was properly dismissed by the court below for failure of the plaintiffs to exhaust administrative remedies before the National Railroad Adjustment Board, which has been given by Congress primary original jurisdiction over controversies of this sort. The Railway Labor Act was passed to provide for the settlement of "all disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions". 45 U.S.C.A. § 151a. By section 3 of the act, the National Railroad Adjustment Board was created and was expressly given jurisdiction over disputes involving various classes of employees including engineers. 45 U.S.C.A. § 153, subd. 1(h). By subsection (i) of that section 45 U.S.C.A. § 153, subd. 1(i), it was provided:

"(i) The disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions, including cases pending and unadjusted on June 21, 1934, shall be handled in the usual manner up to and including the chief operating officer of the carrier desig-

nated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board with a full statement of the facts and all supporting data bearing upon the disputes."

█ The case here involves the rights of employees under a union shop agreement arrived at by collective bargaining. The interpretation of that agreement and the rights and grievances of employees thereunder are just the sort of matters that Congress intended to be handled in the first instance by the National Railroad Adjustment Board. Order of Railway Conductors v. Pitney, 326 U.S. 561, 66 S.Ct. 322, 90 L.Ed. 318; Slocum v. Delaware, L. & W. R. Co., 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795; Order of Railway Conductors of America v. Southern Ry. Co., 339 U.S. 255; Spires v. Southern R. Co., 4 Cir., 204 F.2d 453; Brotherhood of Locomotive Firemen and Enginemen v. Central of Georgia Ry. Co., 5 Cir., 199 F.2d 384, certiorari denied 345 U.S. 908, 73 S.Ct. 648, 97 L.Ed. 1344; Starke v. New York, Chicago & St. Louis R. Co., 7 Cir., 180 F.2d 569, 573. And, as said in the case last cited: "Congress having specifically conferred upon the Adjustment Board the authority to hear and determine plaintiff's grievance, it is not in the absence of express language to be implied that it also intended to confer jurisdiction upon the courts. Such a holding, as a reading of the above cases abundantly discloses, would seriously impair if not destroy the usefulness of the Act and the purpose which Congress sought to achieve."

In Slocum v. Delaware, L. & W. R. Co., supra, 339 U.S. 239, 242–244, 70 S.Ct. 577, 579, the Supreme Court, in holding the jurisdiction of the Board to be exclusive in cases involving grievances and disputes arising out of agreements between carriers and their employees, used the following language:

"The first declared purpose of the Railway Labor Act is 'To avoid any

interruption to commerce or to the operation of any carrier engaged therein'. 48 Stat. 1186 (§ 2), 45 U. S.C. § 151a, 45 U.S.C.A. § 151a. This purpose extends both to disputes concerning the making of collective agreements and to grievances arising under existing agreements.

\* \* \* \* \* \*

"In this case the dispute concerned interpretation of an existing bargaining agreement. Its settlement would have prospective as well as retrospective importance to both the railroad and its employees, since the interpretation accepted would govern future relations of those parties. This type of grievance has long been considered a potent cause of friction leading to strikes. It was to prevent such friction that the 1926 Act provided for creation of various Adjustment Boards by voluntary agreements between carriers and workers. 44 Stat. 578. But this voluntary machinery proved unsatisfactory, and in 1934 Congress, with the support of both unions and railroads, passed an amendment which directly created a national Adjustment Board composed of representatives of railroads and unions. 48 Stat. 1189–1193. The Act thus represents a considered effort on the part of Congress to provide effective and desirable administrative remedies for adjustment of railroad-employee disputes growing out of the interpretation of existing agreements. The Adjustment Board is well equipped to exercise its congressionally imposed functions. Its members understand railroad problems and speak the railroad jargon. Long and varied experiences have added to the Board's initial qualifications. Precedents established by it, while not necessarily binding, provide opportunities for a desirable degree of uniformity in the interpretation of agreements throughout the nation's railway systems. \* \* \* We hold that the jurisdiction of the Board to adjust grievances and disputes of the type here involved is exclusive."

This is one of a number of cases in which controversies have arisen under union shop agreements because of the joining of UROC by members of the Brotherhood; and it has been repeatedly held in these cases that there is no jurisdiction in the courts over controversies of this character in the absence of exhaustion of remedies before the Board. In the Second Circuit, engineers, who had joined the UROC and were threatened with discharge under a similar union shop agreement, brought suit to enjoin their discharge alleging, as do plaintiffs here, that such discharge would be in violation of provisions of the Railway Labor Act. Judge Conger dismissed the suit on the ground that the Board had exclusive jurisdiction, filing an able and comprehensive opinion, which was adopted by the Court of Appeals of the Second Circuit in affirming his order of dismissal. United Railroad Operating Crafts v. Wyer, D.C., 115 F.Supp. 359 affirmed 2 Cir., 205 F.2d 153, certiorari denied 347 U.S. 929, 74 S.Ct. 529, 98 L.Ed. 1081. In the Seventh Circuit, suit was brought by an engineer who had joined the UROC and was threatened with discharge. He asked an injunction and alleged "eight to ten respects in which the discharge order, and the interpretation of the union shop agreement implicit therein" were said to deprive him of his rights under the Railway Labor Act. A three judge court was convened because the constitutionality of the Union Shop Amendment was also challenged in the suit. The three judge court was dissolved on the ground of exclusive jurisdiction in the Board and an opinion was filed for the court by Judge Lindley which answers practically every argument made before us. Upon appeal the action of the three judge court was affirmed in a per curiam order by the Supreme Court. Johns v. Baltimore & O. R. Co., D.C., 118 F.Supp. 317, affirmed 347 U.S. 964, 74 S.Ct. 776, 98 L.Ed. 1107. Judge La Buy, one of the members of the panel of three judges,

dismissed the case when it was returned to him upon the dissolution of the three judge court. Similar injunction suits by engineers who had joined UROC were dismissed on the ground of failure to exhaust the remedy before the Board by the Courts of Appeals of the Ninth and Seventh Circuits in United Railroad Operating Crafts v. Northern Pac. Ry. Co., 9 Cir., 208 F.2d 135, certiorari denied 347 U.S. 929, 74 S.Ct. 529, 98 L.Ed. 1081, and United Railroad Operating Crafts v. Pennsylvania R. Co., 7 Cir., 212 F.2d 938. In the Sixth Circuit a similar suit was dismissed on the same ground in the Eastern District of Michigan by Judge Levin in Pigott v. Detroit, T. & I. R. Co., D.C., 116 F.Supp. 949, certiorari denied 347 U.S. 944, 74 S.Ct. 639, 98 L.Ed. 1092.

None of the grounds upon which it is sought to distinguish these cases has any merit. It is argued on the authority of our decision in Atlantic Coast Line R. Co. v. Pope, 4 Cir., 119 F.2d 39, that the Board has no jurisdiction because of the provisions for appeal and arbitration in the union shop agreement; but it is perfectly clear that the provision for the procedure prescribed by the agreement is in no sense the creation of a System Board of Adjustment such as we dealt with in the Pope case; and in none of the cases cited, in which the same union shop agreement was involved, does it seem to have been thought that the jurisdiction of the Board was in anywise affected by the provision. Furthermore, the provision of the agreement referred to relates to disputes between the Brotherhood and the carrier and not to grievances of the employees against the carrier.

The contention that the court should take jurisdiction, notwithstanding the jurisdiction in the Board, because rights are claimed under a statute does not seem to have impressed the three judge court in Johns v. Baltimore & O. R. Co., supra, 118 F.Supp. 317, nor the Supreme Court, which affirmed its decision, 347 U.S. 964, 74 S.Ct. 776, 98 L.Ed. 1107. It does not impress us. There is no reason why the Board should not consider all rights, statutory and constitutional as well as others, in making its determination. See United Railroad Operating Crafts v. Northern Pacific Ry. Co. supra, 9 Cir., 208 F.2d 135, 138. After such determination is made, plaintiffs, if they feel that any such rights have been denied them, may seek redress in the courts, having then exhausted their administrative remedies; but it would breed endless confusion and virtually nullify the administrative remedy which Congress has been at pains to provide, to allow the Board to be by-passed by an allegation that rights under a statute are involved. As to the contentions that under the statute an employee is required to acquire membership but not to maintain it and that a union of "national scope" is required with respect to acquiring but not with respect to transferring membership, these seem to be frivolous, but there is no reason why the Board should not consider these contentions as well as other matters in making its determination.

Plaintiffs rely upon Steele v. Louisville & N. R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173; Tunstall v. Brotherhood of Locomotive Firemen and Enginemen, 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187, and Brotherhood of Railroad Trainmen v. Howard, 343 U.S. 768, 72 S.Ct. 1022, 96 L.Ed. 1283; but those cases dealt with racial discrimination, as to which the courts were well qualified to grant relief and which involved none of the matters of collective bargaining which the Adjustment Board was set up to handle. The distinction between the racial discrimination dealt with in these cases and the sort of discrimination charged here was adverted to in the Steele case in the following language where, after stating that it was the duty of the bargaining representative to exercise fairly the power conferred upon it, the court said, 323 U.S. 192, 203, 65 S.Ct. 226, 232:

"This does not mean that the statutory representative of a craft is barred from making contracts which may have unfavorable effects on some of the members of the craft

represented. Variations in the terms of the contract based on differences relevant to the authorized purposes of the contract in conditions to which they are to be applied, such as differences in seniority, the type of work performed, the competence and skill with which it is performed, are within the scope of the bargaining representation of a craft, all of whose members are not identical in their interest or merit."

In Spires v. Southern Ry. Co., supra, 204 F.2d 453, 454, we had before us a case in which it was alleged that plaintiffs had been discriminated against by the union acting as their bargaining agent which, it was alleged had acted " 'deliberately and maliciously * * * for the benefit of its members and to the detriment of plaintiffs.' " There, as here, the Steele and Howard cases were relied on as a basis for the court's granting equitable relief; but we affirmed the action of the District Court in dismissing the case on the ground that administrative remedies before the Board had not been exhausted. Logically it may seem that if a court has jurisdiction to protect rights against racial discrimination it should have jurisdiction to protect them against discrimination on account of union membership; but the answer is that the Adjustment Board was not set up to deal with racial controversies, but controversies arising out of labor relationships.

The argument that the Adjustment Board might not furnish a fair tribunal in cases of this character because certain members might be biased and prejudiced because of union affiliations furnishes no reason why the courts may ignore the fact that Congress has vested it with exclusive primary jurisdiction in such cases. United Railroad Operating Crafts v. Pennsylvania R. Co., supra, 7 Cir, 212 F.2d 938, 942–943. As said by Judge Conger in his opinion in the United Railroad Operating Crafts v. Wyer, supra, 115 F.Supp. 359, 365: "In view of the fact that I believe the Adjustment Board has jurisdiction, which the Supreme Court has said is exclusive, I am not certain whether there is room for concern over how plaintiffs will fare before the Board. And it is a fantastic thought that every employee who is discharged under a union shop agreement can run to Court about it."

The argument that the court has jurisdiction under the principles laid down in Texas & N. O. R. Co. v. Brotherhood of Railway and Steamship Clerks, 281 U.S. 548, 50 S.Ct. 427, 74 L.Ed. 1034; and Virginian Railway Co. v. System Federation No. 40, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789 is without force. Those cases held merely that the courts will use their equitable powers to enforce orders of the Board. There is no intimation that they should exercise such powers in the first instance over matters of which the Board has been given exclusive primary jurisdiction.

For the reasons stated, we think that the court below properly dismissed the action because of failure of plaintiffs to exhaust their administrative remedies before the Board, and the order appealed from will accordingly be affirmed.

Affirmed.