TEXAS AND NEW ORLEANS RAILROAD COMPANY v. J. R. McCOMBS.

No. A-211. Decided November 22, 1944.
Rehearing overruled December 20, 1944.
(183 S. W., 2d Series, 716.)

*Baker, Botts, Andrews & Wharton,* of Houston, and *Lamar Cecil,* of Beaumont, for petitioner.

*C. E. Smith,* of Woodville, and *R. F. Roberts,* of Beaumont, for respondent.

MR. JUDGE SMEDLEY, of the Commission of Appeals, delivered the opinion of the Court.

The appeal in this case to the Court of Civil Appeals was from a jugdment of the district court sustaining a plea in abate-

ment filed by petitioner and dismissing respondent's suit. The Court of Civil Appeals reversed that judgment and remanded the cause to the district court for trial on the merits. 178 S. W. (2d) 729.

Respondent's suit is for $2,566.71, alleged to be owing him for overtime that he worked in his employment for petitioner as telegrapher and agent at petitioner's railroad station in Woodville, Texas. His petition alleges and the evidence shows that he worked for petitioner from June 28, 1916, until May 6, 1940, under and subject to a general labor contract, revised and renewed from time to time, between petitioner and the Order of Railroad Telegraphers, a labor organization of which he was a member, the contract being made for his benefit and for the benefit of all members of the organization.

The plea in abatement sustained by the trial court is based upon the labor contract, it being alleged in the plea that according to the terms of the contract it became respondent's duty, in the event he was aggrieved relative to his working condition or rate of pay, to pursue the method stipulated in that contract for adjustment of his grievance, and that he had no right to institute proceedings in court because he had wholly failed to pursue that method of adjustment.

The whole of the labor contract was introduced in evidence but by agreement only parts of it were copied in the record. It was executed April 1, 1938, by the Southern Pacific Lines in Texas and Louisiana (Texas and New Orleans Railroad Company) and the Order of the Railroad Telegraphers. The statement in the contract of its scope indicates that it applies to all persons employed by the railroad company as telegraphers, agents, agent-telegraphers and the like in Texas and Louisiana. Article I relates primarily to hours of service, overtime and rate of pay for overtime. Article XI, on which petitioner relies to support the trial court's judgment abating the suit, is as follows:

"Section 1. An employee disciplined, or who considers himself unjustly treated, shall have a fair and impartial hearing, provided, written request is presented to his immediate superior within five (5) days of the date of the advice of discipline and the hearing shall be granted within five (5) days thereafter.

"Section 2. A decision will be rendered within seven (7) days after completion of hearing. If an appeal is taken, it must be filed with the next higher official and a copy furnished the

official whose decision is appealed, within five (5) days after date of decision. The hearing and decision on appeal shall be governed by the time limits of the preceding section.

"Section 3. At the hearing, or on the appeal, the employee may be assisted by a committee of employees, or by one or more duly accredited representatives.

"Section 4. The right of appeal by employees or representatives in regular order of succession and in the manner prescribed up to and inclusive of the highest official designated by the Company to whom appeals may be made, is hereby established.

"Section 5. An employee on request will be given a letter stating the cause of discipline. A transcript of the evidence taken at the investigation or on the appeal will be furnished on request to the employee or representative.

"Section 6. If the final decision decrees that charge against employee was not sustained, the record shall be cleared of the charge; if suspended or dismissed, employee will be returned to former position and compensated for the wage loss, if any is suffered.

"Section 7. Employees dissatisfied with the results of the investigation, as covered by this article, have the right, without prejudice, to appeal successively to the highest officer of the company, vested with authority for handling such matter either in person or through the Order of Railroad Telegraphers."

Petitioner's contention is that under the plain terms of the labor contract it was incumbent upon respondent, if he wished to assert a grievance arising out of his employment, or if he felt that he was unjustly treated in any manner, either by reason of unfavorable conditions of work or failure to receive adequate pay for his services, to comply with the provisions of Article XI of that contract and to exhaust the remedies prescribed therein before he could resort to the courts. Petitioner relies on Wyatt v. Kansas City Southern Ry. Co., 101 S. W. (2d) 1082, and similar decisions; and it insists that the decision of the Court of Civil Appeals herein is in conflict with the Wyatt case and other earlier cases.

In the Wyatt case the court, construing a labor contract containing provisions for adjustment of grievances substantially the same as the provisions of paragraph XI of the contract in this case, and construing also Sections 151, 151a and 152 of Title 45, USCA, the Railway Labor Act, held that the clear

meaning both of the Railway Labor Act and of the working agreement or labor contract was that, should the plaintiff (who there sued for compensation for overtime and for certain days he was not permitted to work) desire any redress for his claim or grievance, he must first pursue the method expressly pointed out in the agreement before he would have any standing in court.

The decision of the Court of Civil Appeals in the instant case that respondent was not required to seek administrative relief as a condition precedent to his suit in court for payment for overtime rests upon two grounds. The court concluded, first, that this case is distinguishable from the Wyatt case because of the added feature in that case "embodying the grievance of a wrongful layoff of the employee." It further held that, if it be admitted that no such distinction exists, this case is ruled favorably to respondent's contention by Moore v. Illinois Central Railroad Company, 312 U. S. 630, 61 Sup. Ct. 754, 85 L. Ed. 1089. Since we approve the second of the two conclusions, it is unnecessary to express an opinion as to the first.

■ The case last cited, decided several years after the decision of the Wyatt case, was a suit by Moore, a member of the Brotherhood of Railway Trainmen, for damages against the railroad company, claiming that he had been wrongfully discharged. The railroad company contended that the judgment of the trial court in its favor should be sustained because Moore's suit was prematurely brought, he having failed to exhaust the administrative remedies granted him by the Railway Labor Act, 45 USCA, Sections 151 et seq. The decision of that question by the Supreme Court of the United States, the scope of the decision and the reasons given for it, are concisely stated in the following quotation from the opinion:

"But we find nothing in that Act which purports to take away from the courts the jurisdiction to determine a controversy over a wrongful discharge or to make an administrative finding a prerequisite to filing a suit in court. In support of its contention, the railroad points especially to Sec. 153 (i) which, as amended in 1934, provides that disputes growing out of grievances or out of the interpretation or application of agreements 'shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board with a full statement of the facts and all supporting date bearing upon the

disputes.' And in connection with this statutory language the railroad also directs our attention to a provision in the agreement between the Trainmen and the railroad—a provision authorizing Moore to submit his complaint to officials of the railroad, offer witnesses before them, appeal to higher officers of the company in case the decision should be unsatisfactory, and obtain reinstatement and pay for time lost if officials of the railroad should find that his suspension or dismissal was unjust. It is to be noted that the section pointed out, Sec. 153 (i), as amended in 1934, provides no more than that disputes 'may be referred . . . to the . . . Adjustment Board . . .' It is significant that the comparable section of the 1926 Railway Labor Act (44 Stat. at L. 577, 578, chap. 347) had, before the 1934 amendment, provided that upon failure of the parties to reach an adjustment a 'dispute shall be referred to the designated Adjustment Board by the parties, or by either party . . .' This difference in language, sustituting 'may' for 'shall', was not, we think, an indication of a change in policy, but was instead a clarification of the law's original purpose. For neither the original 1926 Act, nor the act as amended in 1934, indicates that the machinery provided for settling disputes was based on a philosophy of legal compulsion. On the contrary, the legislative history of the Railway Labor Act shows a consistent purpose on the part of Congress to establish and maintain a system for peaceful adjustment and mediation voluntary in its nature. The District Court and the Circuit Court of Appeals properly decided that petitioner was not required by the Railway Labor Act to seek adjustment of his controversy with the railroad as a prerequisite to suit for wrongful discharge." 312 U. S. 630, 634-636, 61 S. Ct. 754, 85 L. Ed. 1089, 1092-1093.

Petitioner insists that the Moore case involves merely a construction of the Railway Labor Act and should not control this case, the decision of which, it argues, must rest upon a correct construction of the labor contract. It is, in our opinion, apparent from the foregoing quotation from the opinion of the Supreme Court of the United States and more clearly so from the opinion of the United States Circuit Court of Appeals in the same case (112 Fed. (2d) 959) that both of those courts, in holding that the employee was not required to submit his complaint to the officials of the railroad company before filing suit, took into consideration both the terms of the agreement between the trainmen and the railroad company and the provisions of the Railway Labor Act authorizing the submission of grievances to officers of the railroad company for adjustment. The opinion of the Circuit Court of Appeals contains the statement that "the provision in the collective agreement for a hearing before the carrier's of-

ficers, with appeal to the highest, is in line with the requirements of the statute"; and that court expressly held that the agreement did not make the railroad officers the sole or the final judges of the justice of the cause for discharge of the employee and that appeal to the highest operating officer for reinstatement was not made a prerequisite to an appeal to the court for damages. The substance of the agreement is thus stated in the opinion of that court:

"The agreement before us provides only that yardmen taken out of service for cause shall be notified of the reason and given a hearing within five days if demanded, with right of appeal, 'In case the suspension or dismissal or censure is found to be unjust, yardmen or switchtenders shall be reinstated and paid for all time lost.' " 112 Fed. (2d) pp. 959, 965-966.

The opinion of the Supreme Court, as above quoted, gives the substance of the collective agreement and immediately continues its discussion of the meaning and policy of section 163(i) of the Railway Labor Act, evidently treating the agreement as being in furtherance of that act and not intended to require the employee to seek adjustment of his controversy with the railroad officials as a prerequisite to suit when the act itself does not require him to do so.

That part of the agreement before us which relates to the submission of grievances to officers of the employer company for adjustment is no more obligatory in its terms than was the agreement involved in the Moore case and it is no more obligatory than are the provisions of the Railway Labor Act. The substance of the agreement in that case, as stated in the opinion of the Supreme Court of the United States, was that it authorized the employee to submit his complaint to officials of the railroad company with the right to appeal to higher officers of the company. Section 152 (Second) of the Railway Labor Act provides that disputes between a carrier and its employees "shall" be considered in conference between representatives designated respectively by the carrier and by the employees interested in the dispute; and Section 153(i) provides that disputes between an employee and a carrier growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions, "shall" be handled in the usual manner up to and including the chief operating officer. The agreement in the instant case provides that an aggrieved employee shall have a fair and impartial hearing, *prvided,* he presents written request to his immediate superior, and it gives him the right of appeal to the highest official designated by the com-

pany, if he is dissatisfied with the first decision. He is not required to request a hearing but it is given him if he does request it. And, as said in the opinion of the Court of Civil Appeals, 'there is nothing in the agreement that requires the employee to seek administrative relief as a condition precedent to his suit in court for wages alleged to have been earned.

The nature of respondent's duties is not fully shown by the record but it may fairly be assumed from the facts in evidence that he was engaged in interstate commerce. It may also be assumed that the labor contract in evidence was made for the benefit of employees engaged in interstate commerce and that it was intended to be consistent with the provisions of the Railway Labor Act. If these assumptions are warranted, this court should follow the United States Supreme Court in its construction of the Railway Labor Act and in what we believe was a construction of the agreement in evidence in the Moore case, in spite of the fact that the agreement was but incidentally mentioned in the opinion. Even if these assumptions are not warranted, we believe that for the sake of uniformity of decision with respect to the rights of employees under agreements like that in evidence in this case, which so closely conforms to the provisions of the Railway Labor Act, this court should follow the Moore case rather than the decisions of the courts of civil appeals of this state upon which petitioner relies.

The judgment of the Court of Civil Appeals, reversing the judgment of the district court and remanding the cause for trial on its merits, is affirmed.

Opinion adopted by the Supreme Court November 22, 1944.

Rehearing overruled December 20, 1944.