**KOPPAL v. TRANSCONTINENTAL & WESTERN AIR, Inc.**

No. 14473.

United States Court of Appeals
Eighth Circuit.

Oct. 6, 1952.

Rehearing Denied Nov. 10, 1952.

Riddick, Circuit Judge, dissented.

118

Ray D. Jones, Jr., and Fred J. Freel, Kansas City, Mo., for appellant.

Ruby D. Garrett and Harold L. Warner, Jr., Kansas City, Mo., for appellee.

Before JOHNSEN, RIDDICK and COLLET, Circuit Judges.

JOHNSEN, Circuit Judge.

An employee sued to recover damages from his employer for wrongful discharge. The jury returned a verdict in favor of the employee for $7500. The court, on motion by the employer for judgment notwithstanding the verdict or in the alternative for a new trial, entered an order setting aside the verdict, giving judgment for the employer, and further providing that, if this judgment was reversed on appeal, then the employer was granted a new trial unless the employee filed a remittitur of $6200. The employee has appealed.

The action was one predicated upon breach of the provisions of a collective bargaining agreement made between the employer and a labor union, under the Railway Labor Act, Title II, 45 U.S.C.A. § 181 et seq. The employer was subject to the Act as a carrier by air. The labor union was the bargaining agent pursuant to the Act of the class of employees of the carrier to which the plaintiff belonged, although plaintiff himself was not a member of the union.

The claimed breach consisted (1) in having deprived plaintiff, "without just cause or reason," of the rights of job, seniority, pension and other fringe benefits, as alleged to be impliedly vested in him by the agreement, and (2) in having discharged him "without a fair hearing," as expressly provided for in the agreement.

■ The agreement did not prescribe what should constitute grounds for discharging an employee and thereby depriving him of the rights existing in his favor under the agreement. It accordingly left the question of cause subject to general legal standard within the realities of the contract situation. As to process, however, there was an express provision that a discharge could not be made "without a fair hearing before a designated representative of the Company other than the one bringing complaint against the employee" and that "At a reasonable time prior to the hearing, such employee and his duly authorized representative will be apprised, in writing, of the precise charge and given a reasonable opportunity to secure the presence of necessary witnesses."

Plaintiff was discharged for abuse of the carrier's sick-leave privileges, which entitled employees who had completed six months or more of continuous service to be absent from work for illness, without loss of pay, to the extent of one day for each month of continuous service, cumulative up to a total of 60 days at a time. The contract implicationally provided that "The employees covered by this Agreement, and the Union, recognize an obligation to be truthful and honest and to prevent unnecessary absences and other abuses of sick leave privileges."

The manager of the carrier's "Overhaul Base" in Kansas City, where plaintiff was employed, had accused plaintiff of absenting himself from his work and reporting that he was ill, with intention to collect sick-leave benefits, when he was not in fact ill but was merely taking time off to serve his own convenience. Another employee, who was a friend of plaintiff, had at the same time absented himself and reported illness. When a representative from the employer's "Industrial Relations Department" made an unexpected call at plaintiff's home, plaintiff himself answered the door, and the automobile of the other employee was found standing in front of plaintiff's house.

Upon the return of the two employees to work, they were directed to go to the manager's office, where they were interrogated about the reason for their absence. Both insisted that they had been absent because they were not feeling well enough to work, but they subsequently admitted that, notwithstanding their alleged illness, they had used the occasion to prepare for an examination, which was to be held within a few days, as a qualification for a higher position. Plaintiff also later admitted that a third employee had joined them in their preparation efforts, but he refused to disclose the name of this employee and asserted that the meeting had not been planned but was purely one of coincidence. The manager declared at the close of the interview that he thought that the two employees were lying about their alleged illness and said that he was going to suspend them until a hearing could be held to, air the matter, the time for which he fixed as the second day following.

■ The two employees appeared at the time set, and an informal hearing was held before the "manager of Line Maintenance." The record shows, however, that the evidence produced at this hearing was such that, if the hearing was not otherwise subject to impeachment—a question which will be later considered—anyone called upon to hear and weigh the testimony and circumstances could properly conclude and find therefrom that plaintiff had not been honest in this claim of illness and had been

guilty of abusing his sick-leave privileges. Nor upon the evidence introduced on the court trial did there exist any basis for a jury to declare that this abuse had not constituted the actual reason for the discharge, such as might perhaps be entitled to be done in some equivocal situation of employer motive as related to the purposes of the Act or the provisions of the agreement. And since, as suggested above, the contract had left the question of cause as one of general legal standard applied to the realities of the contract situation, it also would have to be held that plaintiff's dishonest abuse of his sick-leave privileges, as an existing fact and without improper pretext in its use by the employer, constituted in the situation as a matter of law a sufficient ground for his discharge.

Plaintiff was accordingly, we think, not entitled to have a jury resolve whether he was discharged "without just cause or reason," because, as indicated, the evidence legally required the holding that he was discharged for dishonest abuse of the sick-leave privilege, and the contract had left that ground, under proper motive, as a sufficient legal basis for the action which the employer took. Thus, any submission to the jury on that question was in the present situation simply giving the jury an artificial opportunity to veto managerial prerogative and its legitimate exercise.

Plaintiff's second claim of contract breach, as previously noted, was that the discharge had been made "without a fair hearing." In this connection we repeat the provision of the agreement that a discharge should not be made "without a fair hearing before a designated representative of the Company other than the one bringing complaint against the employee" and that "At a reasonable time prior to the hearing, such employee and his duly authorized representative will be apprised, in writing, of the precise charge and given a reasonable opportunity to secure the presence of necessary witnesses."

In so far as the term "fair hearing" in its use in this provision could be said to imply that a discharge should depend, not simply upon whether cause might exist in fact, but rather upon whether proof of the existence of such cause was sufficiently made against the employee at a hearing as to be capable of inducing and to have constituted the basis of the employer's action, what we have said above is here equally controlling of plaintiff's lack of right on the evidence to have these questions tested by a jury as a matter of "fair hearing". No more on this particular aspect than on the general question considered above, does the evidence afford any basis for a jury to say that sufficient cause legally for discharge was not proved or that the employer's action was not taken on the basis of this proof. It should be added also that the question of bias or prejudice in the hearing officer as an element of "fair hearing" is not here involved.

If therefore any jury question existed in the situation in relation to the contractual provision for "fair hearing", it would only be because of the impossibility of saying as a matter of law that all of the processes which the agreement required to underlie the hearing, and which accordingly constituted incidents thereof, had been properly complied with, and so a legal doubt could exist as to the significance of such omission or deviation as had occurred, which the employee was entitled to have appraised in relation to whether on all the circumstances there had been a breach of the prescription for "fair hearing" with its intended incidents, and whether the employee had been prejudiced thereby.

Evidence is contained in the record from which it properly could be found as a fact that no other notice was given plaintiff of the hearing except the oral statement of the manager, after his interview with the two employees, fixing the second day following for an airing of the matter; that the hearing was set for the manager's office and no intention was expressed to have it held by some other officer—another officer being required under the contract only in relation to a discharge proceeding; that no suggestion was made to plaintiff that his job might be in jeopardy or that it would be advisable for him to have any witnesses present who could corroborate his story as to his illness; that the impression which plaintiff received from all the

circumstances was simply that the session was to constitute a fuller airing of the situation, or, as he termed it, "a scare session;" that he thus did not undertake to get the union or anyone else to represent him or to have witnesses present who, he claimed, could have substantiated the fact that he actually was ill and had not lied about the reason for his absence; that, while a representative of the union appeared at the hearing, he did not attempt to confer with plaintiff or to advise him or intercede for him or to bring out his years of job service and previous record of satisfactory relationship; that the union representative's only interest throughout the course of the hearing seemed to be in the problem of absenteeism as it related to union members—of which plaintiff was not one—and the union's attempt to deal with it among its members; and that plaintiff had not realized, either before or through the hearing, that the matter of his discharge was being considered and thus was caught unawares when the hearing officer announced at the close of the hearing that he was persuaded from the evidence presented that plaintiff had been guilty of dishonest abuse of the sick-leave privileges and that he felt that plaintiff should be discharged.

There also was evidence from which a jury could have found that plaintiff appreciated the purpose and significance of the hearing and chose to go ahead with the proceeding on that basis in the manner in which he did. But if the jury found the facts to be as plaintiff contended, it could not be declared as a matter of law that the provisions of the contract for giving written notice of the precise charge and for affording reasonable opportunity to secure the presence of necessary witnesses in relation to such a possible discharge-result had not been so violated as to constitute a possible and prejudicing breach in the situation. A court would not be entitled to rule that it could not matter in any case of discharge whether the notice of hearing given had been oral or written, for the contract in requiring written notice as a basis for discharge plainly had the purpose, not merely of assuring that an employee would be apprised of the precise charge against him, but also of specifically challenging his attention by the form of the notice to the fact that the jeopardy of discharge was involved.

Complaints, grievances and charges about various matters would naturally arise in the course of the employer-employee relationship, which probably would be made the subject of attempted airing, sifting and resolution, but only as to hearings in which the action of discharge might be involved was the employer required to give the employee a written notice. Thus, failure to receive a written notice might well, as plaintiff claimed it had done in his situation, deceive an employee as to what he was facing and mislead him as to the need for making preparation, arranging for representation, and securing the presence of necessary witnesses, and so would be capable of working what might amount in the realities of the situation to a deprivation of these intended privileges under the contract, with the employer being chargeable with knowledge of the possible prejudice being effected from its failure to have given the required written notice.

■ No doubt all of these rights and incidents under the contract were also matters which an employee would be privileged to waive, if he so desired. But such a waiver, like any other, would not be entitled to be held to exist except upon knowledge or understanding on the part of the employee sufficient in the situation to constitute legal responsibility and choice in relation to what the employee was claimed to have waived. The evidence which has been set out above would not under the circumstances permit it to be declared as a matter of law that, in having participated in the hearing, in not having requested a postponement, in having submitted the matter without calling other witnesses, etc., plaintiff had appreciated and waived the effect of his failure to receive written notice, with its implication of the need to make preparation, arrange for representation, and secure the presence of necessary witnesses, and so could not claim any breach of the provision of the contract for being given written notice and being afforded a reasonable opportunity to secure the presence of wit-

nesses. At most, the question of whether such a waiver had been made and existed in fact constituted on all the evidence a question for the jury.

■ We therefore think that the case presented a question for the jury on whether there had been such a violation of the contract provisions referred to as amounted in the situation to a breach of the prescriptions intended to underlie and attend any hearing on which a discharge would be based.

■ Some attempt has been made by the employer to argue that plaintiff was not in fact discharged but that he resigned. It appears from the record that, after the hearing officer had reached his conclusion in the matter, he told plaintiff that, if he preferred not to be formally discharged, he would be permitted, in view of his previous good record, to sign a resignation blank. Plaintiff asked to be allowed to have the resignation blank show that such a resignation would be made under protest. The hearing officer refused to let any such notation be made on the blank. Plaintiff then orally declared that he was signing the blank under protest. The trial court instructed the jury in substance that, if plaintiff had in effect been forced to resign or be discharged and had not voluntarily signed the resignation blank but only in acceptance of the milder form of an inescapable result, then his purported resignation was in the situation simply tantamount to a discharge, but that the jury had the right to say in the situation whether the resignation was in fact given voluntarily or equivalently as a compelled discharge. This instruction was not made the subject of an exception, nor do we think that it basically could have been made so in the circumstances involved. The employer's contention that there was no discharge does not call for further consideration here.

One further question is necessary to be considered in determining whether the court erred in sustaining the employer's motion for judgment notwithstanding the verdict. The motion was sustained, not in relation to the questions which we have previously considered, but on the basis of the court's view, arrived at after the jury had returned its verdict, that no justiciable right to sue for breach could be recognized as existing in the situation, because there had been no preceding resort to and exhaustion of the administrative remedies which were available under the contract.

The contract provided that "appeal may be made * * * to the Chief Operating Officer of the Company or his authorized representative," and it prescribed the steps necessary for the taking of such an appeal. It further provided that, if the decision on such an appeal "is not satisfactory to the Union, the matter may be referred by the System General Chairman [of the Union] to the System Board of Adjustment * * *." It was these provisions for the administrative correction of such wrong as might have been done plaintiff that the court held he was required to exhaust, before he would be entitled to maintain any action for damages.

The court seems to have arrived at this conclusion upon the premise that the agreement involved was a contract made pursuant to and subject to Missouri law, and that under Missouri law the substantive right of recovering damages for wrongful discharge was not enforceable, so long as there existed administrative remedies under the contract which had not been exhausted. See Reed v. St. Louis Southwestern R. Co., Mo.App., 95 S.W.2d 887.

■ The collective bargaining agreement, however, was not one whose administrative-remedy provisions had their source in or were subject to appraisement on the basis of state law. The contract was one made under and pursuant to the prescriptions of the Railway Labor Act, Title II, 45 U.S.C.A. § 181 et seq. Recitation of that fact is made in its preamble, and its body contains a specific provision that "Nothing herein shall be construed to limit, restrict or abridge the rights or privileges accorded either to the employees or to the Company or to their duly accredited representatives, under the provisions of the Railway Labor Act." Furthermore, the administrative-remedy provisions of the agreement conform directly to the requirements of the Act.

45 U.S.C.A. § 184, in the portion here material, provides that "The disputes between an employee or group of employees and a carrier or carriers by air growing out of grievances * * * shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to an appropriate adjustment board, as hereinafter provided, with a full statement of the facts and supporting data bearing upon the disputes." The section further mandatorily provides for the setting up of "a board of adjustment of jurisdiction not exceeding the jurisdiction which may be lawfully exercised by system, group, or regional (railroad) boards of adjustment, under the authority of section 153 of this title." The provision that disputes "shall be handled in the usual manner up to and including the chief operating officer of the carrier" is copied from and is a counterpart of 45 U.S.C.A. § 153, subd. 1(i), applicable to railroad carriers.

The nature and effect of the provisions for the administrative adjustment of disputes contained in the contract are therefore questions relating to the Railway Labor Act and not to Missouri law. And what the nature and effect of such provisions in a contract made under the Railway Labor Act are has been concludingly settled by the Supreme Court.

In Moore v. Illinois Central R. Co., 312 U.S. 630, 634–636, 61 S.Ct. 754, 756, 85 L. Ed. 1089, the question was presented under the sections of the Act applicable to railroad carriers, corresponding to those here involved applicable to carriers by air. In that case, as the opinion indicates, the collective bargaining agreement, like the one here, contained a provision "authorizing Moore (the discharged employee) to submit his complaint to officials of the railroad, offer witnesses before them, appeal to higher officers of the company", etc. The Court related this provision to 45 U.S.C.A. § 153, subd. 1(i) and the language thereof, as under 45 U.S.C.A. § 184 here, that disputes "shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes", etc. None of this, however, the Court said, could be regarded as constituting machinery for settling disputes on a contract under the Railway Labor Act "on a philosophy of legal compulsion" but was intended merely "to establish and maintain a system for peaceful adjustment and mediation voluntary in its nature." And so, the Court declared, "The District Court and the Circuit Court of Appeals properly decided that petitioner (the discharged employee) was not required by the Railway Labor Act to seek adjustment of his controversy with the railroad as a prerequisite to suit for wrongful discharge." 312 U.S. at page 636, 61 S.Ct. at page 756. See also Slocum v. Delaware, L. & W. R. Co., 339 U.S. 239, 244, 70 S.Ct. 577, 94 L.Ed. 795; Texas & N. O. R. Co. v. McCombs, 143 Tex. 257, 183 S.W.2d 716, 719.

In the face of this declaration and construction, Missouri would not, of course, be at liberty to hold contrarily that the adjustment provisions of a contract made under and pursuant to the Railway Labor Act were compulsory in nature and constituted conditions precedent to the right to sue for wrongful discharge in an employment relationship covered by the Act. Missouri law applicable to employment relationships would be without application to relationships under the Railway Labor Act, at least within the field of any matters regulated by the Act. So far as a suit for wrongful discharge is concerned, the administrative remedies prescribed by the Act and incorporated in a contract made under it would therefore have to be treated by the Missouri courts, for justiciable purposes in their forum, the same as a situation under Missouri law of a contract in which no administrative adjustment provisions were contained.

For these reasons, the trial court erred in granting, on the basis of the holding in Reed v. St. Louis Southwestern R. Co., Mo.App., 95 S.W.2d 887, the employer's motion for judgment notwithstanding the verdict. It should be added also that, in view of the Moore case, supra, Harrison v. Pullman Co., 8 Cir., 68 F.2d 826, decided prior thereto, can no longer be regarded as reflective of

the law on the need to exhaust administrative remedies as a prerequisite to a suit for wrongful discharge under a contract made under and pursuant to the Railway Labor Act.

What we have said requires that the court's order sustaining the employer's motion for judgment notwithstanding the verdict and the judgment for defendant entered on the basis thereof be reversed. This leaves the situation upon remand subject to the alternative order of the court, granting a new trial unless plaintiff files a remittitur of $6200. In connection with this order, the court stated that such action was being taken because the jury had been permitted by the instructions to make its verdict include damages for mental anxiety, loss of seniority rights, vacation pay, transportation privileges, longevity accruals, and other fringe benefits, which on fuller consideration the court regarded as not constituting proper elements of recovery under Missouri law. The amount to which the verdict was cut represented, in the court's view, all the pecuniary loss which the evidence established that plaintiff had sustained from his discharge.

■ We are asked by plaintiff to make expression upon the correctness of these views of the trial court. The granting of a new trial is of course not as such a reviewable order. Any expression upon the questions involved in the court's ruling would therefore be a matter of grace and not of right. But we are not satisfied upon the briefs before us to make any foreclosing expression, and we do not feel called upon to engage in the voluntary exhaustive research which would be necessary, and to which we would be obligated to resort, were the questions matters of right. To undertake so to do at the present time would be to slight other cases in which questions remain to be answered as a matter of right. Our consideration therefore has extended no further than the material in the briefs, and on that material we would not be able to say that the trial court's appraisal of Missouri law as to the nature and extent of damages recoverable for a wrongful discharge was erroneous. This observation, however, is made without commitment and without prejudice to the position of the parties or the course of the trial court in any subsequent proceedings.

Reversed and remanded for further proceedings.

COLLET, Circuit Judge (concurring).

I agree that Missouri law is not controlling in this case and that the case of Moore v. Illinois Central R. Co., 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089, is. Hence, I concur in the result remanding the cause for further proceedings.

I believe that the question of just cause was properly a jury question under the circumstances.

I am of the opinion that under the circumstances and in view of the fact the case is properly before us, we should give the trial court the benefit of our judgment concerning the correctness of its conclusion relating to the measure of damages and the propriety of the alternative order directing a remittitur.

RIDDICK, Circuit Judge (dissenting).

My disagreement with the majority in this case follows from my conclusion as to the character of the action and the basis of the jurisdiction of the District Court.

Appellant was employed by appellee, a carrier subject to the Railway Labor Act, under a collective bargaining agreement between appellee and a union representing its employees. The contract provided that appellant could not be discharged without a fair hearing before an officer of the appellee other than the one bringing the charge against him, that at a reasonable time prior to the hearing the appellant would be given notice in writing of the precise charge against him and a reasonable opportunity to secure the presence of necessary witnesses, and that if the appellant was not satisfied with the decision of the hearing officer he had the absolute right of appeal to the highest executive officer of appellee.

Appellant was charged with violation of the appellee's sick leave rule set out in the contract of employment, was tried, found guilty, and discharged. He brought this

action against appellee for damages, actual and punitive, for an alleged breach of his contract of employment.

The only breach of the contract alleged in the complaint is that "plaintiff was discharged without a fair hearing, that he was not notified in writing of the precise charge against him, and that he was not given a reasonable opportunity to secure the presence of witnesses at a hearing prior to the time of his discharge." Appellant alleged that if given notice and opportunity he would have produced witnesses and would have proved that he was not guilty of the charge against him; and that as the result of appellee's breach of the contract of employment, appellant was damaged by the loss of wages and of his seniority and pension rights and other benefits to which he was entitled under the contract.

At the trial in the District Court there was evidence on behalf of appellant from which the jury might have found that he did not receive notice in writing of the precise charge against him; but the evidence also shows without dispute that appellant was interviewed at length by the officer who preferred the charge against him, that he was fully apprised of the nature of the charge, that he understood it, that his trial before the hearing officer was set for a day which appellant requested, that it lasted for five hours with an adjournment for lunch, that appellant was present at the trial and testified, and that he not only called no witnesses, although they were readily available, but concealed the identity of one witness who was familiar with the facts on which the charge was based.

The record also shows without dispute that at the conclusion of the trial the hearing officer announced a verdict of guilty on the charge, ruled that cause for appellant's discharge was stated in the charge, advised the appellant of his absolute right to appeal to a higher officer of the company; and that appellant, refusing to appeal, brought this action for damages. In the District Court there was a jury verdict for the appellant which on motion of the appellee the court set aside and entered judgment for appellee. This appeal followed.

I think it follows from what has been said that on the pleadings the only and controlling issue to be submitted to the jury was whether appellant had received a fair trial of the charge against him to which he was entitled under his contract of employment. The jury in the District Court was not entitled to substitute its judgment for that of the tribunal provided in the contract of employment on the question whether the charge against appellant stated grounds for discharge, or upon the question whether the evidence before the appointed tribunal was sufficient to sustain its verdict, since there was substantial evidence to support it. To this extent I agree with Judge JOHNSEN, as well as with his disposition of appellant's request for a ruling on the correct measure of damages for the alleged breach of contract.

As I read the record I find no evidence to sustain appellant's charge that he was denied a fair trial in accordance with the contract on which he relies. The District Court could have granted the motion for judgment notwithstanding the verdict on that ground alone. But the District Court, being of the opinion that the substantive law of Missouri controlled, gave as his reason for granting the appellee's motion the appellant's admitted failure to appeal from the adverse decision of the hearing officer and thus to exhaust the remedies provided by the contract on which he sued. And it is this ruling which the court now finds erroneous and for which it reverses and remands the case.

Ordinarily an appellate court is not concerned with the reasons which a trial court gives for a correct decision. But because of the question now to be discussed, which goes to the very character of the action and the jurisdiction of the District Court, I think it not improper for me to state my reasons for the conclusion that the District Court was correct in applying local law in the action before it.

This action is not one arising under the laws of the United States of which the District Court has jurisdiction under Title 28 U.S.C. § 1331. The action is one of which the District Court has jurisdiction solely because of diversity of citizenship and the

sum in controversy. Burke v. Union Pac. R. Co., 10 Cir., 129 F.2d 844; Starke v. New York, Chicago & St. Louis R. Co., 7 Cir., 180 F.2d 569. Appellant, a citizen of Kansas, sued the appellee, a citizen of Delaware, in a District Court sitting in Missouri to recover damages in excess of $3,000 for appellee's alleged breach of a contract of employment of appellee executed and to be performed in Missouri. Nothing in the Railway Labor Act is controlling or even pertinent to the question to be decided. The District Court was correct in holding that the controlling substantive law was that of Missouri concerning which there is no dispute. Reed v. St. Louis, Southwestern R. Co., Mo.App., 95 S.W.2d 887; Harrison v. Pullman Co., 8 Cir., 68 F.2d 826.

There is nothing in Moore v. Illinois Central R. Co., 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089, which requires or even suggests any other conclusion. In the Moore case the Supreme Court sustained the exclusive jurisdiction of a District Court in a diversity suit brought by an employee against his employer to recover damages for an alleged breach of a collective bargaining agreement entered into pursuant to the Railway Labor Act, even though it was necessary to decision that the District Court construe the collective bargaining agreement. Marchitto v. Central R. Co. of New Jersey, 9 N.J. 456, 88 A.2d 851. The Court of Appeals was reversed for its refusal to apply State law, and in a later case brought by Moore against the same employer, arising out of the same transaction as the first, the Court of Appeals applied the law of the State in which the action arose and was brought. Moore v. Illinois Central R. Co., 5 Cir., 136 F.2d 412, 413.

It is true that in the Moore case the Supreme Court said that the right of an employee to sue an employer for damages for breach of a collective bargaining agreement of employment was not dependent upon the prior exhaustion of the employee's administrative remedies under the Railway Labor Act. But to give that statement the meaning which the majority attribute to it is to lift it out of context and to ignore the difference in character between rights and remedies available to an employee before the Adjustment Board under a contract made pursuant to the Railway Labor Act, and those available to him in a common law action for damages for the breach of such a contract. This distinction is made plain in the opinion of the Supreme Court in Slocum v. Delaware, L. & W. R. Co., 339 U.S. 239, 244, 70 S.Ct. 577, 94 L.Ed. 795, and in Order of Railway Conductors v. Southern R. Co., 339 U.S. 255, 70 S.Ct. 585, 94 L.Ed. 811, and is recognized in the decision of this court in Priest v. Chicago, R. I. & P. R. Co., 8 Cir., 189 F.2d 813, 815.

In the Slocum case the action was by a railroad company for a declaratory judgment interpreting collective bargaining agreements with two unions of its employees. The Supreme Court held that the jurisdiction of the Adjustment Board under the Railway Labor Act of grievances arising under the bargaining agreements was exclusive, but it expressly held that the decision was not in conflict with the Moore case, saying 339 U.S. at page 244, 70 S.Ct. at page 580:

"Moore was discharged by the railroad. He could have challenged the validity of his discharge before the Board, seeking reinstatement and back pay. Instead he chose to accept the railroad's action in discharging him as final, thereby ceasing to be an employee, and brought suit claiming damages for breach of contract. As we there held, the Railway Labor Act does not bar courts from adjudicating such cases. A common-law or statutory action for wrongful discharge differs from any remedy which the Board has power to provide * * *."

Since a proceeding under the Railway Labor Act before the Adjustment Board and an action at law in a District Court for damages for breach of contract are wholly different in character, assert different rights, and seek different remedies, in separate tribunals of mutually exclusive jurisdiction, it can not be said that before resorting to one action the litigant must first resort to the other. Where either action is available, the litigant has his choice. That is all the Moore case stands for. It certainly does not stand for the proposition that in an action for damages for breach of a Missouri

contract, tried in a District Court in Missouri whose jurisdiction is based solely upon diversity of citizenship and the sum in controversy, the substantive law of Missouri is not controlling.

I would affirm the judgment of the District Court.