262 S.W.2d 157 (1953)
MAYFIELD
v.
THOMPSON.
No. 21836.
Kansas City Court of Appeals. Missouri.
October 5, 1953.
Thomas J. Cole, St. Louis, Ragland, Otto, Potter & Carson, Jefferson City, Leon P. Embry, California, for appellant.
Jo B. Gardner, Monett, Frank W. Hayes, Sedalia, for respondent.
BOUR, Commissioner.
A. C. Mayfield brought suit against Guy A. Thompson, trustee of the Missouri Pacific Railroad Company, a corporation, to recover damages for his alleged wrongful discharge from defendant's employ. Verdict and judgment were for plaintiff in the sum of $5,292, and defendant has appealed.
From August, 1941 until September 2, 1945, plaintiff was employed as a brakeman by defendant, an interstate carrier subject to the Railway Labor Act, 45 U.S.C.A. § 151 et seq. During the time of his employment there was in force a written collective bargaining contract between defendant and the Brotherhood of Railroad Trainmen, a labor organization of which plaintiff was a member. That organization was the bargaining *158 representative of the class of defendant's employees to which plaintiff belonged. The written contract contained the following provisions:
"Article 51. Suspension and Discharge: Any trainman may be suspended from duty for a reasonable time, or for investigation of any alleged misconduct, or for violation of rules or orders, and may be discharged from the service of the Railroad for good and sufficient causes. These causes shall include intemperance, incompetency, habitual neglect of duty, gross violation of rules or orders, dishonesty or insubordination. For any of these causes they may be suspended by the Trainmaster and discharged by the Superintendent.
"Article 52. Investigation: Before a trainman is discharged, or suspended for a definite term, or notation is made against his record, for an alleged fault, he shall have a fair and impartial trial, at which he may have a trainman of his choice, selected from the Railroad's service, to represent him, who will be permitted to examine witnesses. He or his representative shall be furnished with a copy of the evidence brought out at such investigation, which will be the basis for the discipline administered. When suspended for investigation, such investigation shall be held within five days. If found innocent, he shall be paid at regular rates for time lost, and reinstated. * * * When a notation is entered against the record of a trainman he will be furnished a copy and will receipt for it. If the notation against his record is decided to be unjust it will be eliminated. * * *
"Article 53. Appeal: Any employee included under the provisions of this agreement who is dissatisfied with the decision of any officer of the Railroad shall have the right to appeal therefrom, in writing, to the General Manager, after having first submitted his case to the decision of the General Superintendent and to the Assistant General Manager".
While in the employ of defendant, plaintiff was "on the extra board" at Sedalia, Missouri, where he resided. Sedalia was a division point on defendant's eastern division. On August 27, 1945, plaintiff was suspended by Foster Sparks, defendant's trainmaster at Sedalia, on a charge of being "absent and unavailable for duty without permission and missing a call for duty on August 25, 1945", in violation of Rule 703 of defendant's Uniform Code of Operating Rules; and he was notified that a hearing would be held on that charge August 29, 1945. Plaintiff attended the hearing or investigation, which was held at Sedalia before Trainmaster Sparks, on August 29, 1945. He was represented at the hearing by L. D. Powell, local chairman of the Brotherhood of Railroad Trainmen. G. F. Scheider, defendant's yard clerk or "caller" at Sedalia, was the only witness produced by defendant. Plaintiff called no witnesses. Mr. Scheider and plaintiff were interrogated by Trainmaster Sparks and Mr. Powell. A transcript of the evidence adduced at the hearing was sent to W. H. Bailey, superintendent of defendant's eastern division, whose office was in Kansas City, Missouri. Plaintiff was discharged by Superintendent Bailey on September 2, 1945, and was promptly notified of his dismissal.
This suit was filed August 10, 1950, nearly five years after plaintiff was discharged. After the original petition had been twice amended, the cause was tried to a jury in March, 1952. Plaintiff conceded that he was given a fair hearing before the trainmaster in accordance with the terms of Article 52 of the collective bargaining contract. His theory of the case was that he had a cause of action against defendant because he was discharged without good and sufficient cause in violation of Article 51 of the contract. Our Supreme Court has recognized such a claim. See Craig v. Thompson, Mo.Sup., 244 S.W.2d 37; Wilson v. St. Louis-San Francisco Ry. Co., 362 Mo. 1168, 247 S.W.2d 644; Annotation 18 A.L. R.2d 352, 367. As stated, the verdict and judgment were for plaintiff.
While the defendant's brief contains several assignments of error, we will discuss only onenamely, that the court erred in rejecting defendant's offer to prove by plaintiff, on cross-examination, that he had *159 failed to exhaust the administrative remedies provided by Article 53 (set out above) of the collective bargaining contract. The record shows that defendant made such an offer and that it was rejected by the court. In support of the above contention, defendant cites Reed v. St. Louis S. W. R. Co., Mo.App., 95 S.W.2d 887, an action by a former employee of the defendant railroad company to recover damages for alleged wrongful discharge in violation of a collective bargaining contract. The St. Louis Court of Appeals reversed a judgment in favor of the plaintiff because he had failed to exhaust the administrative remedies provided by the contract. This case was decided in 1936. No other Missouri decision on the point has been found.
Plaintiff contends, as he did in the trial court, that he was not required to exhaust the remedies provided by Article 53, supra, as a prerequisite to suit in court for wrongful discharge. He argues that the decision of the St. Louis Court of Appeals, in the Reed case, is contrary to the ruling of the Supreme Court of the United States in Moore v. Illinois Central R. Co., 312 U.S. 630, 634, 636, 61 S.Ct. 754, 756, 85 L.Ed. 1089, and contrary to what the Supreme Court said of the Moore case in Slocum v. Delaware, L. & W. R. Co., 339 U.S. 239, 244, 70 S.Ct. 577, 580, 94 L.Ed. 795. He also cites Texas & N. O. R. Co. v. Mc-Combs, 143 Tex. 257, 183 S.W.2d 716, and Earle v. Illinois Central R. Co., 25 Tenn.App. 660, 167 S.W.2d 15, 23. Plaintiff insists that since both of the parties to this suit were subject to the Railway Labor Act at all times here material, the ruling in the Moore case is controlling and precludes the application of state law in determining the effect of Article 53. He concludes that the trial court did not err in refusing defendant's offer of proof "that plaintiff did not exhaust his rights of appeal through officials of appellant".
In the last mentioned case, Moore, a member of the Brotherhood of Railroad Trainmen, brought suit for damages against the respondent railroad company in a Mississippi state court, claiming he had been wrongfully discharged contrary to the terms of a contract between the Trainmen and the railroad. The case was removed to a federal court, where Moore recovered a judgment. D.C., 24 F.Supp. 731. It appears that the contract of employment between Moore and the railroad was made in Mississippi and was performed in that state until the date of Moore's discharge. See 5 Cir., 112 F.2d 959. As stated in the opinion of the Supreme Court, the union-railroad contract contained "a provision authorizing Moore to submit his complaint to officials of the railroad, offer witnesses before them, appeal to higher officers of the company in case the decision should be unsatisfactory," etc., 312 U.S. 630, 635, 61 S.Ct. 754, 756. It was shown that Moore had failed to exhaust the remedies afforded by that provision. Under the law of Mississippi, he was not required to exhaust those remedies in order to sustain his action for wrongful discharge. See Moore v. Illinois Central R. Co., 180 Miss. 276, 176 So. 593. The Railway Labor Act provides that disputes between an employee and a carrier "shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred" to the Adjustment Board. 45 U.S.C.A. § 153, subd. 1(i). In the Moore case the Supreme Court said: " * * * But we find nothing in that (Railway Labor) Act which purports to take away from the courts the jurisdiction to determine a controversy over a wrongful discharge or to make an administrative finding a prerequistite to filing a suit in court. * * * The District Court and the Circuit Court of Appeals properly decided that petitioner (Moore) was not required by the Railway Laber Act to seek adjustment of his controversy with the railroad as a prerequisite to suit for wrongful discharge." 312 U.S. 630, 634, 636, 61 S.Ct. 754, 756, 85 L.Ed. 1089.
There is no merit in plaintiff's contention that the ruling in the Moore case precludes the application of the law of Missouri in determining the effect of Article 53 of the contract in question; and there is nothing *160 in Slocum v. Delaware, L. & W. R. Co., supra, that supports plaintiff's position. This is made clear in the opinion of the Supreme Court in the recent case of Transcontinental & Western Air, Inc., v. Koppal, 345 U.S. 653, 73 S.Ct. 906, 97 L.Ed. 1325, which was decided after the instant case was argued on appeal.
In that case the record showed that Koppal, a citizen of Kansas, was employed as a mechanic in Kansas City, Missouri, by Transcontinental & Western Air, Inc., a Delaware corporation. His employer (hereinafter referred to as T. W. A.) was a carrier by air, engaged in interstate commerce and subject to the Railway Labor Act, 45 U.S.C.A. §§ 181-188. The terms of Koppal's employment contract were stated in a written agreement between T. W. A. and the International Association of Machinists. That association was a labor union which, for collective bargaining purposes, represented Koppal and other mechanics in the employ of T. W. A. The written contract provided that an employee covered by the agreement should not be discharged "without a fair hearing before a designated representative of the Company * * * "; that "at a reasonable time prior to the hearing, such employee" would be given notice in writing of the charge against him and given a reasonable opportunity to produce necessary witnesses; and that a "written decision" would "be issued within five (5) work days after the close of such hearing". The contract provided that "appeal may be made * * * to the Chief Operating Officer of the Company, or his authorized representative", and it prescribed the steps necessary for the taking of such an appeal. It further provided that if the decision on such an appeal "is not satisfactory to the Union, the matter may be referred by the System General Chairman (of the Union) to the System Board of Adjustment" or, by mutual agreement, to arbitration. See 8 Cir., 199 F.2d 117, 122.
On November 9, 1949, Koppal was charged with violation of "the sick leave provisions of his contract". On November 11, 1949, he was given a hearing on that charge before a representative of T. W. A., found guilty, and discharged. He did not appeal from the adverse decision of the hearing officer. In June, 1950, he brought suit against T. W. A. in the United States District Court for the Western District of Missouri, to recover damages for alleged wrongful discharge. The jury returned a verdict for $7,500, but the court set aside the verdict and dismissed the complaint on the ground that Koppal had failed to appeal from the decision of the hearing officer and had otherwise failed to exhaust the contract remedies set out above. In so doing the court applied the law as stated by the St. Louis Court of Appeals in Reed v. St. Louis S. W. R. Co., supra. The Court of Appeals for the Eighth Circuit, with one judge dissenting, reversed the judgment of the District Court and remanded the case for further proceedings. 199 F.2d 117. T. W. A. was granted certiorari. In reversing the judgment of the Court of Appeals and affirming the judgment of the District Court, the Supreme Court said:
"The complaint sought judgment for damages resulting from the alleged unlawful discharge of respondent in violation of a contract of employment made in Missouri, to be performed in Missouri and agreed by the parties to be a "Missouri contract.' Accordingly, if the Railway Labor Act were not involved, there would be no question but that the substantive law of Missouri should determine the requirements of the cause of action, the interpretation of the contract and the measure of damages to be applied. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188; Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477." 345 U.S. at page 656, 73 S.Ct. at page 908, 97 L.Ed. at page 1325.
After reviewing Harrison v. Pullman Co., 8 Cir., 68 F.2d 826 (a diversity case, removed from a Missouri state court) and Reed v. St. Louis S. W. R. Co., supra, the Court stated: "Under the law of Missouri, as shown above, respondent was required to show exhaustion of administrative remedies under his employment contract in order to sustain his cause of action. As he did not do so, the District Court's dismissal *161 of his complaint was justified, unless the fact that petitioner was a carrier subject to the Railway Labor Act or the fact that the employment contract was drafted pursuant to that Act should make a difference." 345 U.S. at page 660, 73 S.Ct. at page 909, 97 L.Ed. at page 1325. The Supreme Court quoted with approval from the opinions in the Moore and Slocum cases, supra, and continued:
"The result is that, whereas, under the Railway Labor Act, the Adjustment Board has exclusive jurisdiction to adjust grievances and jurisdictional disputes of the type involved in the Slocum case, that Board does not have like exclusive jurisdiction over the claim of an employee that he has been unlawfully discharged. Such employee may proceed either in accordance with the administrative procedures prescribed in his employment contract or he may resort to his action at law for alleged unlawful discharge if the state courts recognize such a claim. Where the applicable law permits his recovery of damages without showing his prior exhaustion of his administrative remedies, he may so recover, as he did in the Moore litigation, supra, under Mississippi law. * * *
"On the other hand, if the applicable local law, as in Missouri, requires an employee to exhaust his administrative remedies under his employment contract in order to sustain his cause of action, he must show that he has done so. Here respondent was employed by a carrier, subject to Title II of the Railway Labor Act, and his employment contract contained many administrative steps for his relief, all of which were consistent with that Act. Accordingly, while he was free to resort to the courts for relief, he was there required by the law of Missouri to show that he had exhausted the very administrative procedure contemplated by the Railway Labor Act. In the instant case, he was not able to do so and his complaint was properly dismissed." 345 U.S. at pages 661-662, 73 S.Ct. at page 910, 97 L.Ed. at page 1325.
In the case at bar, it is clear that the substantive law of Missouri is controlling. We return, then, to the case of Reed v. St. Louis S. W. R. Co., supra, where the plaintiff brought suit for damages against the defendant railroad company, alleging that he had been discharged by the defendant on or about October 21, 1928, in violation of the provisions of a written contract between the defendant and a labor organization of which the plaintiff was a member. Verdict and judgment were for the plaintiff, and the defendant appealed. In reversing the judgment, the St. Louis Court of Appeals said, 95 S.W.2d at pages 888-889:
"Appellant's first assignment of error is that the trial court erred in overruling its demurrer offered at the close of the case, in that though the contract of employment provided that `should the accused be discharged or otherwise disciplined and consider such action unjust, his committee may, within thirty days, appeal in writing to the superintendent; should they be dissatisfied with the decision of the superintendent they may appeal in writing within thirty days to the vice president and general superintendent who will then grant a hearing, rendering decision within fifteen days,' neither the respondent, nor any one for him, took an appeal from the action of the assistant superintendent in ordering his discharge after the hearing. This assignment of error is based upon the rule that where a contract of employment provides, as in the instant case, that a discharged employee may seek redress by appealing to certain designated officers, boards, or tribunals, such an employee is required to pursue and exhaust his contract remedy and cannot properly complain to a court for redress until he was exhausted the remedies accorded him by his contract. The point is well taken.
"The evident purpose of including the provisions in the contract of employment specifying the method of action in hearing the charges preferred against employees is to discourage litigation as a means of settling controversies. In the instant case a complete code is provided for the hearing of complaints against employees before designated officers, providing, among other *162 things, for the right on the part of the employee, in the event of suspension or dismissal, to appeal. Respondent's action is based upon the alleged breach of this contract, and, to prevail, he must show that he has brought himself within its terms and has been unable to secure a proper determination of the charges against him by the means therein expressly provided.
"Under his contract of employment, after his hearing upon the charge of alleged violation of rule G, respondent received notice that he was discharged. * * * But concededly no appeal was taken by respondent, and thus having failed to exhaust the remedies provided for in the contract in the manner relating to his discharge, plaintiff cannot present his case in court as a justiciable controversy."
The Reed case is in accord with the prevailing view. 31 Amer.Jur., Labor, sec. 123, p. 881; Annotation 95 A.L.R. 10, 52; Hamilton, Individual Rights Arising from Collective Labor Contracts, 3 Mo.L.Rev. 252, 266. We think the decision in Reed case is based on sound reasoning and that the rule announced in that case is applicable here. Under the law as stated by the court of appeals, the plaintiff herein was required to show that he had exhausted the administrative remedies provided by the contract in question in order to sustain his cause of action. While the plaintiff had the burden of showing that he had exhausted those remedies, the defendant had the right to show that plaintiff had failed to do so.
At the trial, plaintiff's counsel requested him to tell the jury what steps he had taken, if any, to gain reinstatement. Plaintiff stated that after he was discharged he "went to Mr. Sparks", the trainmaster; that he "went up to Mr. Bailey" and "made an attempt to see him", but was "refused"; and that he "also saw Mr. Dougherty" who "took Mr. Bailey's place". He offered no evidence to show that he appealed from the decision rendered by Superintendent Bailey on September 2, 1945, discharging him. When counsel for defendant sought to show by cross-examining plaintiff that he did not appeal from that decision, plaintiff's counsel said: "I thought we weren't going into that". The trial judge indicated that such evidence would be excluded and suggested that counsel for defendant make an offer of proof. Defendant's counsel then offered to show by cross-examining plaintiff that he had failed to exhaust his administrative remedies under the contract, and the judge said: "Plaintiff's objection is sustained". At the close of all the evidence defendant moved for a directed verdict on the ground, among others, that the evidence showed that "plaintiff did not exhaust his contract remedies and contract rights of appeal to successive officers of the defendant and, therefore, that he did not and does not have a cause of action, and did not and does not have a justiciable controversy".
The record shows that throughout the trial plaintiff took the position that he was not required to exhaust the administrative remedies provided by Article 53 of the collective bargaining contract in order to sustain his action, and that he objected to the offer of evidence by defendant to show that he had failed to exhaust such remedies. As stated above, plaintiff contends on appeal, as he did in the trial court, that he was not required to exhaust his contract remedies as a prerequisite to suit for wrongful discharge. There is not the slightest suggestion in the record or in plaintiff's brief that he did appeal from the adverse decision of Superintendent Bailey. Now the defendant-appellant did not raise the question which we have discussed in this opinion by assigning as error the overruling of his motion for a directed verdict. As appears above, the question was presented here by defendant's assignment that the trial court erred in rejecting his offer of proof. It is our duty, however, to dispose of the case on appeal, if possible. We think the only conclusion that can be reached after a careful study of the entire record is that plaintiff failed to exhaust the administrative remedies provided by Article 53 of the collective bargaining contract. *163 Under these circumstances it would serve no useful purpose to remand the case for a new trial. The judgment should be reversed and the cause remanded with directions to enter judgment for defendant, and the commissioner so recommends.
SPERRY, C., concurs.
PER CURIAM.
The foregoing opinion of BOUR, C., is adopted as the opinion of the court. The judgment is reversed and the cause remanded with directions to enter judgment for defendant.
All concur.