## DONAHOO v. THOMPSON.

### No. 22058.

Kansas City Court of Appeals.
Missouri.
June 7, 1954.

Harold L. Harvey, St. Louis, Johnson, Lucas & Bush, Hilary A. Bush, Fred A. Murdock, Kansas City, for appellant.

Jo B. Gardner, Monett, for respondent.

BOUR, Commissioner.

C. S. Donahoo brought suit against Guy A. Thompson, trustee of the Missouri Pacific Railroad Company, a corporation, to recover damages for his alleged wrongful discharge from defendant's employ. Verdict and judgment were for plaintiff in the sum of $7,200, and defendant has appealed.

In paragraphs one and two of the petition it was alleged in substance that at all times mentioned in the petition plaintiff and defendant were engaged in interstate commerce and were subject to the Railway Labor Act, 45 U.S.C.A. § 151 et seq.; that on October 26, 1952, and for many years prior thereto, plaintiff was employed as a conductor by defendant; that during the time of plaintiff's employment there was in force a written contract between defendant and the Order of Railway Conductors entitled "Schedule of Wages, Conductors", which contract was executed in Missouri; and that said written contract was a part of plaintiff's contract

of employment with defendant. Plaintiff then set out, in part, Articles 54 and 55 of the written contract. Plaintiff alleged in paragraph three of the petition that on October 26, 1952, he was discharged by defendant's superintendent, C. L. Christy, for alleged violations of certain operating rules of defendant; that "said discharge was wrongful and unlawful because, under said Articles 54 and 55, he was not discharged for good and sufficient causes and had not violated said rules of defendant, and because plaintiff was not given a fair and impartial trial (hearing), and for the further reason that defendant's agents and officials were prejudiced against plaintiff and caused his discharge to be brought about without having any cause therefor * * *"; and that as a result of said wrongful discharge plaintiff was damaged in the amount of $67,500.

In the answer, defendant admitted the allegations in paragraphs one and two of the petition; admitted that plaintiff was discharged by defendant on October 26, 1952; and denied every other allegation in the petition. Further answering, defendant pleaded that the petition failed to state a claim on which relief could be granted; and "that plaintiff failed and refused to avail himself of all of his remedies made and provided under the terms of his employment contract with defendant, and particularly that he failed and refused to appeal to the General Manager of defendant as provided in Article 56 (set out in full) of said contract (entitled 'Schedule of Wages, Conductors'), and that by reason thereof this suit is premature."

At the trial the parties stipulated as follows: "1. That the employment of plaintiff by defendant, as mentioned in plaintiff's petition, was by virtue of and pursuant to the terms of a certain employment contract entitled 'Schedule of Wages, Conductors'. 2. That said employment contract was duly executed for and on behalf of plaintiff by J. B. Corn, General Chairman of the Order of Railway Conductors, and for and on behalf of defendant by E. C. Wills, Assistant General Manager, at the City of St. Louis, State of Missouri, and that said employment contract has been continually in force and effect since May 1, 1928 and is now in full force and effect. 3. That the following articles and provisions are contained in and are a part of said employment contract, to-wit:

" 'Article 54.—Suspension and Discharge—Any conductor may be suspended from duty for a reasonable time, or for investigation of any alleged misconduct, or for violation of rules or orders, and may be discharged from the service of the Company for good and sufficient causes. These causes shall include intemperance, incompetency, habitual neglect of duty, gross violation of rules or orders, dishonesty or insubordination. For any of these causes they may be suspended by the Trainmaster and discharged by the Superintendent.

" 'Article 55.—Investigations—Before a conductor is discharged, or suspended for a definite term, or notation is made against his record, for an alleged fault, he shall have a fair and impartial trial, at which he may have a conductor of his choice, selected from the Company's service to represent him, who will be permitted to examine witnesses. He or his representative shall be furnished with a copy of the evidence brought out at such investigation, which will be the basis for the discipline administered. When suspended for investigation, such investigation shall be held within five days. If found innocent, he shall be paid at regular rates for time lost and reinstated. If retained more than five days awaiting investigation, he shall be paid for extra time in excess of five days, whether found guilty or not. When a notation is entered against the record of a conductor he will be furnished a copy and will receipt for it. If the notation against his record is decided to be unjust it will be eliminated. * * *

" 'Article 56.—Appeal—Any employee included under the provisions of this agreement who is dissatisfied with the decision of any officer of the Company shall have the right to appeal therefrom, in

writing, to the General Manager, after having first submitted his case for the decision of the General Superintendent and to the Assistant General Manager.' "

On October 17 or 18, 1952, plaintiff received a letter signed by E. J. Drimmel, defendant's trainmaster at Van Buren, Arkansas. The letter reads as follows: "Arrange to report to office of undersigned, Van Buren, Arkansas, 9:00 a.m. Tuesday, October 21, 1952, for formal investigation in connection with setting out RI–64153 at Neodesha, Oklahoma, train 161, about 6:15 p.m., October 15th, account hot box, which car was later found on fire, resulting in total loss of contents and considerable damage to car. Violation of Rules 99–J, 107, 111A and other rules applicable. Bring representative if desired."

Plaintiff attended the hearing or investigation, which was held at Van Buren before Trainmaster Drimmel, on October 21, 1952. He was represented by C. J. Payne, local chairman of the Order of Railway Conductors (hereinafter referred to as the O.R.C.). Fifteen witnesses testified at the hearing, including plaintiff. Plaintiff and his representative were permitted to examine the witnesses. A transcript of the evidence adduced at the hearing was sent to C. L. Christy, superintendent of defendant's central division, whose office was in Coffeyville, Kansas. Plaintiff's representative was furnished with a copy of the transcript and plaintiff received a copy of his own testimony. Plaintiff was discharged by Christy on October 26, 1952. He was notified by letter, dated October 26, 1952, and signed by Christy, that his dismissal was for "violation of Operating Rules 99–C, 99–J, 107 paragraphs 1, 2 and 4, and 111A," on October 15, 1952, at Neodesha, Oklahoma.

This suit was instituted on January 26, 1953. It appears from plaintiff's evidence at the trial in the circuit court that upon receipt of the letter of dismissal the plaintiff, in accordance with union procedure, requested C. J. Payne, local chairman of the O.R.C., to present plaintiff's claim for reinstatement (with pay for all time lost) to Christy. Payne presented the claim as requested and Christy notified Payne by letter dated November 25, 1952, that he refused "to reinstate Conductor C. S. Donahoo to all former rights as conductor and pay for all time lost while dismissed from service." Plaintiff then authorized G. R. Ogletree, general chairman of the O.R.C. to submit his claim to R. Johnson, defendant's assistant manager. On December 11, 1952, Ogletree wrote a letter to Johnson in which he stated: "We are appealing from Supt. Christy's decision dated November 25, 1952, File R–305, addressed to C. J. Payne, * * *." He requested Johnson to reinstate plaintiff "with seniority unimpaired and with pay for all lost time, as this is not a leniency case." In his reply, dated December 18, 1952 and addressed to Ogletree, Johnson stated: "When Conductor Donahoo calls on Superintendent Christy and admits his responsibility and shows an attitude of willingness to perform his duties in a manner in which they should be performed, Superintendent Christy will consider his reinstatement on a leniency basis and until that is done any request for reinstatement on either a leniency basis or pay for time lost is declined." Plaintiff did not appeal to defendant's general manager as he had the right to do under Article 56 (set out above) of the collective bargaining contract.

Plaintiff testified that he did not call on Superintendent Christy as Johnson suggested, and continued: "Q. Mr. Donahoo, why were you unwilling to have this considered on a leniency basis? A. Because I was not guilty of any rule violation. * * * Under leniency I would have had to admit guilt. Q. And (receive) no pay for the time the company had you out of service? A. Yes, sir. Q. You were willing to do that and that ended any appeal as far as you were concerned under your rights under the union contract? A. Yes, sir. Q. Then you employed counsel and brought this suit? A. Yes, sir." Plaintiff further testified that after he was discharged Christy said to him: "As long as I have anything to do with it and

as far as I am concerned you will never work for this railroad another day."

In view of the conclusion which we have reached in this case, it is unnecessary to state the other evidence introduced at the trial in the circuit court. At the close of all the evidence defendant moved for a directed verdict on the ground, among others, that "the evidence conclusively shows that plaintiff failed to appeal to the general manager of defendant railroad as provided by Article 56 of plaintiff's employment contract with defendant, mentioned in evidence, and that by reason of such failure this suit is premature and plaintiff cannot recover." As indicated above, this motion was overruled and the jury returned a verdict for plaintiff.

The brief of defendant-appellant contains several assignments of error, but we will consider only one; namely, that the court erred in overruling defendant's motion for a directed verdict, because the evidence conclusively showed that plaintiff had failed to exhaust the administrative remedies provided by Article 56 of the contract here involved. The parties agree that the substantive law of Missouri is controlling in determining the effect of Article 56.

■ Defendant relies upon our decision in Mayfield v. Thompson, Mo.App., 262 S.W.2d 157, 158. There a discharged conductor sued his former employer, an interstate carrier by railroad, to recover damages for his alleged wrongful discharge in violation of a collective bargaining contract between the defendant and the Brotherhood of Railroad Trainmen, a labor organization of which plaintiff was a member. The plaintiff was charged with "missing a call for duty"; and he attended a hearing, which was held on that charge, before the defendant's trainmaster. Following the hearing, the plaintiff was discharged by the defendant's superintendent, and was promptly notified of his dismissal. The plaintiff did not appeal to the defendant's assistant general manager, from the decision of the superintendent, discharging him, although provision for such appeal was provided for in Article 53 of the collective bargaining contract. Instead, about five years later, he sued the defendant and won a verdict and judgment for damages due to his discharge. On appeal, this court held that the plaintiff was required to show that he had exhausted the administrative remedies provided by Article 53 of the collective bargaining contract in order to sustain his cause of action, citing and quoting from the opinion in Reed v. St. Louis Southwestern R. Co., Mo.App., 95 S.W.2d 887, decided by the St. Louis Court of Appeals. The plaintiff was unable to do so. As indicated above, no appeal was taken by the plaintiff from the decision of the superintendent. Article 53 contained no time limitation on the right to appeal to a higher officer. Where no time limit is fixed by the contract, the law implies a reasonable time. Any rights or claims which the plaintiff may have had as a result of his discharge ceased to exist when he failed to appeal to the defendant's assistant general manager within a reasonable time after he was notified of his dismissal. He was discharged on September 2, 1945, and the suit to recover damages for alleged wrongful discharge was filed on August 10, 1950. When the suit was filed the "reasonable time" within which to appeal had long since expired. We reversed the judgment for plaintiff and remanded the cause with directions to enter judgment for defendant.

To repeat, in the instant case the hearing before the trainmaster was held on October 21, 1952. Plaintiff was discharged by Superintendent Christy on October 26, 1952, and was promptly notified of his dismissal by letter dated October 26, 1952 and signed by the superintendent, C. L. Christy. Following his dismissal plaintiff authorized C. J. Payne, local chairman of the O.R.C., to present plaintiff's request for reinstatement to Christy. Payne presented the request to Christy, who denied it and notified Payne of his action by letter dated November 25, 1952. Plaintiff then authorized G. R. Ogletree, general chairman of the O.R.C., to submit his claim to R. Johnson, defendant's assistant manager. By letter dated December 11, 1952, Ogletree

notified Johnson that "we are appealing from Supt. Christy's decision dated November 25, 1952, * * *." Johnson notified Ogletree by letter dated December 18, 1952, that plaintiff would never be reinstated except on a leniency basis and subject to other conditions which need not be repeated here. Plaintiff did not appeal to defendant's general manager. This suit was filed on January 26, 1953.

Under the law as stated above, plaintiff did not sustain his cause of action. His own testimony showed that he had not exhausted the remedies provided by Article 56 of the collective bargaining contract. But the question remains as to whether the court erred in overruling defendant's motion for a directed verdict.

Article 56 did not limit the time within which an employee might appeal from a decision of an officer of the railroad. As stated above, where no time limit is fixed by the contract, the law implies a reasonable time. Applying the rule of "a reasonable time under the circumstances", we think the appeal to R. Johnson, defendant's assistant general manager, on December 11, 1952, from Supertintendent Christy's decision of November 25, 1952, was timely. Defendant is in no position to contend otherwise, for Johnson considered plaintiff's claim or request and rendered a decision on the merits on December 18, 1952. Thirty-nine days thereafter, and on January 26, 1953, plaintiff filed this suit. We are unwilling to say that the limit of the period that could be held to be a reasonable time within which to appeal from Johnson's decision, under the circumstances of this case, was a period of less than thirty-nine days. In other words, we cannot say that the time for taking an appeal from Johnson's decision expired before plaintiff filed this suit. This being so, the defendant was not entitled to have a verdict directed in his favor. It follows that the judgment should not be reversed outright. It is clear, however, that plaintiff's action was premature, for he admitted that he had not exhausted the remedies provided by Article 56 of the contract. Under

these circumstances, the judgment should be reversed and the cause remanded with directions to dismiss the petition without prejudice. The commissioner so recommends.

SPERRY, Commissioner (concurs).

PER CURIAM.

The foregoing opinion of BOUR, C., is adopted as the opinion of the court. The judgment is reversed and the cause remanded with directions to dismiss the petition without prejudice.

All concur.